J. Manuel BANALES, Appellant,

v.

Garson R. JACKSON et al., Appellees.

No. 8478.

Court of Civil Appeals of Texas, Beaumont.

June 5, 1980.

---

J. Manuel Banales, Corpus Christi, for appellant.

Lonny F. Zwiener, Austin, for appellees.

KEITH, Justice.

This is a suit challenging the validity of the May 3, 1978, order of the Supreme Court of Texas requiring lawyers in Texas to pay a one-time fee assessment "for the sole purpose of reducing any indebtedness created by the construction of the Texas Law Center . . . ." Plaintiff, a duly licensed lawyer in Texas, instituted suit challenging the validity of the order. Garson R. Jackson was named as a defendant "individually and in his official capacity as Clerk of the Supreme Court of Texas . . . ." Plaintiff named the Supreme Court of Texas as a defendant "in its statutory role pursuant to the State Bar Act of Texas . . . ."

Plaintiff sought and was granted a temporary injunction restraining the Court and its Clerk from enforcing the one-time fee assessment. Thereafter, all parties filed motions for summary judgment. Defendants' motion was granted, plaintiff's motion denied, the temporary injunction dissolved, and judgment entered dismissing the cause with prejudice. Plaintiff has duly appealed and the cause has been transferred to this Court by an order of the Supreme Court equalizing the dockets of the several Courts of Civil Appeals. See C. Barrow, "Transfer of Cases Between Courts of Civil Appeals by the Supreme Court of Texas", *41 Tex. B.J. 335 (1978)*.

The specific relief plaintiff sought was an order which would prohibit the Clerk from advising, commanding, instructing, or ordering any trial judge to refuse plaintiff the privilege of practicing law in such court because of his refusal to pay the fee assessment. There is no dispute in the facts.

In January 1978, the Board of Directors of the State Bar of Texas petitioned the Supreme Court of Texas for a one-time assessment referendum to be submitted to the lawyers sometime prior to April 1, 1978. This petition set out the amounts to be assessed against the members, the maximum assessment being $138 payable in three annual installments of $46. See, generally, T. Shelton, "President's Page", *41 Tex.B.J. 223 (1978)*. The Supreme Court, in

accordance with *Tex.Rev.Civ.Stat.Ann. Art. 320a–1, Sec. 4, subds. (b) and (c) (1973)*, and *Art. IV, Sec. 4*, "Rules Governing the State Bar of Texas",[1] ordered a referendum of the membership on the question submitted by the Board of Directors.

The Court promulgated an order on May 3, 1978, reciting that more than fifty-one percent of the membership of the State Bar had participated in such referendum, and 12,696 members voted for the one-time assessment while 8,686 opposed such assessment. On the date noted, the Court ordered the one-time assessment as approved by the members. The order provided that the assessment be paid to the Clerk of the Supreme Court.

The fees are due and payable by the members of the State Bar of Texas in accordance with *Art. IV, Sec. 4*, State Bar Rules, and the next succeeding section, *Sec. 5*, provides for suspension for nonpayment of fees. We quote the applicable provisions in the margin.[2]

Plaintiff argues at length that the Supreme Court has no authority to invoke the summary suspension provisions of *Art. IV, Sec. 5*, of the Rules except for nonpayment of the "annual membership fee". He argues:

"[B]ecause the one-time fee assessment authorized by the Supreme Court in its May 3rd Order does not come within the meaning of the annual membership fee authorized by Section 4, Article IV of the Rules, the sanctions of Section 5 were not available to Appellee [Clerk] to compel

Appellant or the lawyers of Texas to pay the one-time fee assessment."

■ The fallacy of the argument advanced lies in its complete disregard of the potential inherent power of the Supreme Court to regulate the practice of law. The trial court predicated the judgment in this case upon this conclusion of law:

"The Supreme Court of Texas, through its inherent power to regulate the practice of law, may prohibit the practice of law by those persons who have not paid the one-time building fee assessment."

We agree with the conclusion expressed and will affirm the judgment for the reasons now to be stated.

It is now too late to dispute the existence of the inherent power in the Supreme Court to regulate the practice of law. See *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–399, fn. 1 (Tex.1979), and authorities therein cited. See also, J. Hill and D. Kent, "Administrative Law", *34 Sw.L.J. 471, 475–476 (1980)*. Indeed, the Supreme Court has specifically addressed the question in its order promulgated effective June 11, 1979, the very date Senate Bill 287, 66th Legislature, became effective. See order following *Tex.Rev.Civ.Stat.Ann. Art. 320a–1 (Supp. 1980)*. The order was also published in *42 Tex.B.J. 756 (1979)* and in *Volume 583–584 S.W.2d xxxiii (Texas Cases only)*.

The Court noted the legislative recognition that the primary responsibility for the regulation of the legal profession was in the Court under the doctrine of separation of powers and went further, saying:

1. The *Rules* are to be found in Title 14, Appendix, following *Art. 320a–1, Tex.Rev.Civ.Stat. Ann. (1973)*.

2. *Sec. 4:* "The annual membership fee prescribed by the Supreme Court shall be due and payable by each member to the Clerk of the Supreme Court June 1 of each fiscal year  .  .  . ."

*Sec. 5:* "A member in default of payment of the fee for sixty days after it is due shall be regarded as delinquent and shall be given written notice thereof by the Clerk of the Supreme Court. If the delinquent member fails to pay such fee within thirty days thereafter, he shall cease to be a member  .  .  . .. If at the end of ninety days after June 1, a member has not

paid to the Clerk membership dues for the current year, the Clerk shall strike from the rolls of the State Bar the name of the delinquent member.

"Any County or District Judge, or any Judge of any Appellate Court of this State, shall have the right, and it shall be his duty to refuse any person the privilege of practicing in such court, unless such person is currently a member of the State Bar of Texas in good standing. Any lawyer in this State whose name has been stricken from the rolls of the State Bar for non-payment of dues, and who has not been reinstated, shall not be permitted to practice law in this State  .  .  . .."

"It is, however, the duty of this Court in the exercise of its own inherent power to regulate and control the practice of law and to provide for the proper administration of justice."

In publicly asserting its inherent powers, our Supreme Court did not embark upon any bold or uncharted course. Instead, it followed the definite trend which has been noted throughout the nation for several years. The late Leroy Jeffers, in an outstanding article, "Government of the Legal Profession", *9 St. Mary's L.J. 385, 397 (1978),* cited many cases supporting his thesis:

> "The conclusion is that the constitutional power to govern the legal profession and to regulate the practice of law in Texas is vested exclusively in the Judicial Department. There is a great and growing body of judicial authority supporting this proposition."

Mr. Jeffers cites many cases from courts across the nation, a few of which are set out in the margin.[3]

Supreme Court Clerk Jackson sent out the notice to all lawyers in Texas of the amount of their annual dues and the special assessment for the year 1978–79; thereafter, on November 17, 1978, he wrote to those who had not paid the special membership fee advising them of the penalties for nonpayment. Plaintiff received such notice but did not pay the amount due.

Thereafter, on January 22, 1979, Jackson sent a letter to the judges of Texas wherein he quoted the first sentence of *Tex.Rev.Civ. Stat.Ann. Art. 320a–1, Sec. 3 (1973),* as set out in the margin.[4] This letter also quoted *Article IV, Sec. 5,* of the Rules Governing the State Bar of Texas, and attached a list of attorneys who had not paid such assessment or the dues. Plaintiff's name appeared upon such list.

The importance of this letter lies in Jackson's testimony, which is uncontroverted in our record, that the letter "was prepared by the [Supreme] Court, to be sent out under my signature." He was asked specifically:

"Q. All right, sir, but did the Court itself prepare the letter, then?

"A. Yes.

　　*　　*　　*　　*　　*　　*

"Q. So then the Supreme Court itself dictated the contents of the letter?

"A. That is right."

In this letter, the Supreme Court directed all judges in Texas to deny the right to practice law in any court by any lawyer then delinquent in the payment of "their regular or special membership fees (or both) . . . ." This, of course, included plaintiff who had not complied with the May 3, 1978, order.

Now, and for more than forty years, the State Bar of Texas has constituted an administrative agency of the judicial department. *Acts 1939, 46th Leg. p. 64, Sec. 2,* as interpreted by Chief Justice Alexander in *Hexter Title & Abstract Co. v. Grievance Committee, etc.,* 142 Tex. 506, 179 S.W.2d 946, 948 (1944). The original act creating the integrated bar was simply legislative recognition of the inherent power of the judicial department to regulate the practice of law. For four decades, without challenge—indeed with subsequent recognition by the Legislature in 1979—the State Bar has continued in its role as an integral part of the judicial department of the State of Texas.

---

**3.** *Matter of Washington State Bar Ass'n,* 86 Wash.2d 624, 548 P.2d 310 (1976); *State ex rel. Schwab v. Washington State Bar Ass'n,* 80 Wash.2d 266, 493 P.2d 1237 (1972); *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973); *Ross v. Industrial Comm'n,* 566 P.2d 367 (Colo.App.1977); *Mendicino v. Whitchurch,* 565 P.2d 460 (Wyo.1977); *In re Integrating the Bar,* 222 Ark. 35, 259 S.W.2d 144 (1953); *Richmond Ass'n of Credit Men, Inc. v. Bar Ass'n,* 167 Va. 327, 189 S.E. 153 (1937); *In re Houston,* 378 P.2d 644 (Alaska 1963). Other cases from Florida, Georgia, Missouri, Nebraska, New Hampshire, Oklahoma, and Rhode Island are also cited.

**4.** "All persons who are now or who shall hereafter be licensed to practice law in this State shall constitute and be members of the State Bar, and shall be subject to the provisions hereof and the rules adopted by the Supreme Court of Texas; and all persons not members of the State Bar are hereby prohibited from practicing law in this state . . . ."

■ The order which we review in this case is unusual only in the sense that the entity charged with governing the bar not only promulgated the rule fixing the assessment, it also interpreted its rule so as to enforce it upon the members of the integrated bar. Thus, in the case at bar, the Supreme Court, in the exercise of its inherent power to govern the practice of law, found the necessary facts in support of its order of May 3, 1978. When it prepared the letter signed by the Clerk on·January 22, 1979, it interpreted its prior order requiring payment of the special assessment. This January 1979 action, therefore, became the law of the case and must be accepted and followed by all courts of lower rank. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964).

■ We consider the exercise of the inherent power of the Court to be analogous to the exercise of delegated power by the Legislature in the enactment of statutes. It is not to be presumed that the Legislature has acted unreasonably or arbitrarily; instead, we begin with a presumption of validity. Nor are we, as an intermediate court, authorized to consider the wisdom or expediency of action taken by the Supreme Court in the exercise of its inherent power. See generally, *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968).

Plaintiff labored under the burden of establishing the invalidity of the order promulgated by the Supreme Court. *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex.1974), and authorities therein cited. He has not discharged his onerous burden.

■ There is yet another reason requiring affirmance of the judgment of the trial court. The new State Bar Act, adopted by the 66th Legislature effective June 11, 1979, ·*Tex.Rev.Civ.Stat.Ann. Art. 320a–1, Sec. 20(c) (Supp.1980)*, contained this language:

"All dues and fees assessed and in effect on the effective date of this Act shall remain in force and effect until and un-

less amended pursuant to Section 8 of this Act."

Upon the same day that the aforesaid statute became effective, the Supreme Court promulgated its order, mentioned earlier, which contained similar language.[5]

Thus, while plaintiff's litigation contesting the validity of the special one-time assessment was alive and pending in the District Court of Travis County, both the Legislature and the Supreme Court ratified and validated the assessment which he was then contesting.

In his brief, plaintiff concedes the inherent power of the Supreme Court to regulate the practice of law and to order fees paid by attorneys; he even concedes that the Legislature may not override this inherent power of the judiciary to regulate the practice of law; yet, he insists that the Court's power to issue rules governing the practice is limited to rule-making provisions "given" to it in the State Bar Act.

■ We disagree. We are of the opinion that when a provision of the State Bar Act conflicts with orders of the Supreme Court regarding attorney conduct as to fees or other related matters, the statutory provisions must yield to the Court's rules, and to its construction thereof and amendments thereto. This is so because the Supreme Court does not share the power to regulate the practice of law with the Legislature. The ultimate constitutional power lies solely within the jurisdiction of the Supreme Court. See and compare *State ex rel. Schwab v. Washington State Bar Ass'n*, 80 Wash.2d 266, 493 P.2d 1237, 1239 (1972); *Matter of Washington State Bar Ass'n*, 86 Wash.2d 624, 548 P.2d 310, 315 (1976). See also, *Sharood v. Hatfield*, 296 Minn. 416, 210 N.W.2d 275 (1973), and authorities therein cited.

■ Plaintiff's due process contentions have all been answered by opinion by a three-judge court in the case of *Buschbach-*

---

5. Section 5 of the order read: "All dues and fees assessed and in effect on the effective date of this order, shall remain in full force and

effect and the budget heretofore adopted for the Bar's fiscal year 1979–80 shall remain in full force and effect."

*er v. Supreme Court of Ohio*, Nos. C–2–75–743, –75–751, –76–309 (S.D.Ohio 1976), aff'd sub nom. *Cuyahoga County Bar Ass'n v. Supreme Court of Ohio*, 430 U.S. 901, 97 S.Ct. 1167, 51 L.Ed.2d 577 (1977). The *Buschbacher Court*, in an unpublished opinion which received the unqualified approval of the Supreme Court of the United States, found no denial of due process upon a record less complete than the one before us. We reach the same result.

We have reviewed all of plaintiff's contentions, and finding no merit in his single "Malooly" point,[6] the judgment of the trial court is AFFIRMED.

---

**6.** See *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).