Maria **GOMEZ**, Alicia Naveja, and Leonardo Chavez, Appellants,

v.

**STATE BAR OF TEXAS**, James Parsons III, and Karen Johnson, Appellees.

No. 3–92–154–CV.

Court of Appeals of Texas. Austin.

June 9, 1993.

Rehearing Overruled Aug. 11, 1993.

November 22, 1991.

James C. Harrington, TX Civ. Rights Project, Ginny Agnew, Austin, for appellants.

James M. McCormack, Gen. Counsel, Linda A. Acevedo, Asst. Gen. Counsel, Austin, for appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

Maria Gomez, Alicia Naveja, and Leonardo Chavez, on behalf of themselves and others similarly situated (collectively, "Plaintiffs"), appellants, filed a class-action suit in the district court against the State Bar of Texas and two of its officials, James Parsons III and Karen Johnson, individually and in their capacity as State Bar officials (collectively, "Defendants"). Plaintiffs alleged constitutional, statutory, and other violations arising from Defendants' actions and inaction in connection with providing pro bono legal services. After Plaintiffs filed suit, six individual lawyers intervened, three as plaintiffs and three as defendants. The trial court dismissed Plaintiffs' cause for lack of jurisdiction over the subject matter. On appeal, Plaintiffs assert six points of error complaining that the trial court erred in dismissing the cause for lack of subject-matter jurisdiction and in failing to grant Plaintiffs' motion for sanctions.[1] We will reverse the trial court's judgment and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs alleged that approximately ninety percent of the serious legal needs of indigent Texas citizens are unmet and that approximately eighty percent of lawyers licensed to practice in Texas fail to participate in organized programs delivering free legal services to the indigent. On behalf of themselves and those similarly situated, Plaintiffs, as indigent citizens of Texas, alleged they are entitled to free legal services, have sought such services, but have been denied them.

Plaintiffs contend that Defendants have a legal duty to provide free legal services to indigent citizens of Texas. Plaintiffs first assert that this duty has been affirmatively imposed on Defendants through rules promulgated and orders issued by the Texas Supreme Court. Plaintiffs allege that the supreme court imposes this duty through the following "directives":

(1) the preamble to the Texas Disciplinary Rules of Professional Conduct, which provides in part:

---

1. Defendants have requested in their brief to this Court that several portions of Plaintiffs' points of error be stricken, alleging that Plaintiffs are attempting to raise issues not raised in their pleadings. In the absence of a ruling on special exceptions, as is the case here, and in light of the dismissal for lack of jurisdiction, we must liberally construe the petition in Plaintiffs' favor. *See Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446–47 (Tex.1993); *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982). We decline to grant Defendants' request.

"Every lawyer, regardless of professional prominence or professional workload, should find time to participate in or otherwise support the provision of legal services to the disadvantaged. The provision of free legal services to those unable to pay reasonable fees is a moral obligation of each lawyer as well as the profession generally."

Tex. Disciplinary R.Prof. Conduct preamble ¶ 6 (State Bar Rules art. X, § 9).

(2) Comment 3 to Tex. Disciplinary R.Prof. Conduct 6.01 (State Bar Rules art. X, § 9), which provides in part: "[E]ach lawyer engaged in the practice of law should render public interest legal service."

(3) Article I, sections 2 and 3 of the Texas Lawyer's Creed, which sets forth the following affirmations for all lawyers licensed in Texas: "2. I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life. 3. I commit myself to an adequate and effective pro bono program."

Plaintiffs assert that Defendants are violating the legal duties these directives allegedly impose.

Plaintiffs also assert that Defendants' failure to provide free legal services deprives them and other indigent citizens of Texas of fundamental rights guaranteed to them by various state constitutional and statutory provisions. Specifically, appellants allege that inability to obtain free legal services deprives them of their fundamental rights guaranteed in the Texas Constitution pursuant to: (1) the open courts provision, Tex.Const. art. I, § 13; (2) the equal protection provision, Tex.Const. art. I, § 3; (3) the equal rights amendment, Tex.Const. art. I, § 3a; (4) the due course of law provision, Tex.Const. art. I, § 19; and (5) the general rights provision, Tex. Const. art. I, § 29. Further, Plaintiffs assert that Defendants' failure to provide them free legal services has deprived them of fundamental rights guaranteed to them by Texas statutory law. *See* Tex.Civ.Prac. & Rem.Code Ann. § 106.001 (West 1986 & Supp.1993) (prohibition against discrimination).

Based on these allegations, Plaintiffs requested the district court to grant them both declaratory and injunctive relief. First, Plaintiffs requested that, pursuant to the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (West 1986 & Supp.1993), the district court declare their rights and legal relations under the supreme court's directives and various constitutional and statutory provisions. Second, Plaintiffs requested that the district court issue a prohibitory injunction enjoining Defendants from violating the relevant supreme court directives and from violating Plaintiffs' fundamental rights guaranteed by Texas constitutional and statutory law. Finally, Plaintiffs requested that the district court issue a mandatory injunction requiring Defendants to implement an adequate and effective pro bono program to provide free legal services to indigent citizens of Texas.

In response, Defendants filed separate pleas to the jurisdiction asserting a lack of subject-matter jurisdiction. In a letter to the parties, the district court announced its decision to grant Defendants' pleas to the jurisdiction and stated its rationale for doing so. The district court subsequently signed a written order dismissing Plaintiffs' cause for lack of subject-matter jurisdiction. The court also denied Plaintiffs' motion for sanctions that arose out of a discovery dispute.

## SCOPE OF APPEAL

In the present case, the district court decided that, for reasons we will discuss, it did not have "jurisdiction," (i.e., judicial authority), to determine the "merits" of Plaintiffs' claims (i.e., whether or not Plaintiffs are legally entitled to the declaratory and injunctive relief they seek). Having come to that conclusion, the district court appropriately refrained from addressing the merits of Plaintiffs' claims for relief. The district court's decision narrows the scope of this appeal. Our task is only to decide whether the district court was correct in concluding that it did not have juris-

diction. Our decision, like the district court's, should not be considered as any indication of our opinion about the merits of Plaintiffs' claims.

At various places in their brief to this Court, Defendants advance arguments why Plaintiffs are not entitled to the relief they seek. Such arguments go beyond the issue of the district court's jurisdiction to hear and decide this cause and are, therefore, arguments on the merits of Plaintiffs' claims. Because such arguments are outside the scope of this appeal, we will not address them.

## JURISDICTION

■ In points of error one through five, Plaintiffs complain that the district court erred in dismissing their cause for lack of subject-matter jurisdiction. The jurisdictional issues presented are unique and complex. The district court based its decision on article V, section 8 of the Texas Constitution. In this appeal, however, we must affirm the district court's judgment if it can be supported on any basis, even if it is not the basis identified by the trial court for its decision. *See Guaranty County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986). Accordingly, we will address not only the legal basis relied on by the district court, but also two other legal bases asserted by Defendants that could potentially be grounds for upholding the district court's judgment of dismissal. We will address the following possible legal bases for upholding the district court's dismissal: (1) article V, section 8 of the Texas Constitution, which defines the scope of district courts' jurisdiction; (2) determination of standing and justiciable controversy under the facts of the present case; and (3) determination of the district court's authority to grant the types of relief requested.

## 1. ARTICLE V, SECTION 8

In concluding that it lacked jurisdiction to hear Plaintiffs' case, the district court

focused on article V, section 8 of the Texas Constitution and section 81.011 of the State Bar Act. Article V, section 8 of the Texas Constitution defines the general scope of the jurisdiction of district courts in Texas:

> District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, *except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body....*

> The District Court shall have appellate *jurisdiction and general supervisory control* over the County Commissioners Court....

Tex.Const. art. V, § 8 (emphasis added). Section 81.011 of the State Bar Act provides: "The Supreme Court of Texas, on behalf of the judicial department, shall exercise *administrative control* over the state bar under this chapter." Tex.Gov't Code Ann. § 81.011(c) (West 1988) (emphasis added). Based on this provision and actions taken by the supreme court pursuant to its authority to supervise the practice of law, the district court concluded that exclusive "jurisdiction" over the subject matter of the present cause had been conferred on the Texas Supreme Court. Accordingly, the court concluded that the "exception" clause in the first paragraph of article V, section 8 of the Texas Constitution precluded it from exercising jurisdiction over Plaintiffs' claims.

■ In point of error five, Plaintiffs complain that the granting to the supreme court of administrative control over the State Bar does not divest the district court of subject-matter jurisdiction to consider disputes concerning the practice of law. We agree. We acknowledge that the Texas Supreme Court exercises exclusive administrative regulation, supervision, and control over the practice of law.[2] Howev-

---

**2.** We note that section 81.011(c) of the Government Code did not actually "grant" the supreme court exclusive control over the regulation and supervision of the practice of law. The supreme court has that control pursuant to its inherent

powers under the Texas Constitution. The State Bar Act is merely an aid in the supreme court's exercise of its inherent power to regulate and control the practice of law. *See State Bar of Texas v. Heard,* 603 S.W.2d 829, 831 (Tex.1980);

er, we do not deem this administrative control as dispositive of the jurisdictional question presented in this case, for the reasons set forth below.

 Courts exercise two distinct types of functions: (1) *adjudicative,* by which they decide disputes through a system of legal actions, proceedings, and remedies; and (2) *administrative,* by which they supervise various aspects of the judicial system, including the practice of law. We believe the "jurisdiction" granted to district courts in article V, section 8 of the constitution refers solely to those courts' *adjudicative* functions, i.e., their authority to adjudicate legal disputes, as distinguished from their *administrative* functions. Likewise, the exception clause in that section logically restricts district courts' authority to adjudicate disputes only where the power to exercise an *adjudicative* function has been conferred on another court, tribunal, or administrative body. Thus, the exception clause in article V, section 8 does not restrict a district court's authority to adjudicate disputes, i.e., its jurisdiction, where only an *administrative* duty has been conferred on another court, tribunal, or body. We find support for this proposition in several sources.

### a. Definition of "Jurisdiction"

 The seminal Texas Supreme Court case on the jurisdiction of district courts is *Morrow v. Corbin,* 62 S.W.2d 641 (Tex. 1933). Because the supreme court in that case addressed so thoroughly the scope and meaning of district courts' jurisdiction, we quote at length from the court's opinion:

"Judicial power" is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision.

"Jurisdiction" of a particular court is that portion of the judicial power which it has been authorized to exercise by the Constitution or by valid statutes.

. . . .

*Daves v. State Bar of Texas,* 691 S.W.2d 784, 788–89 (Tex.App.—Amarillo 1985, writ ref'd

The Constitution is specific in confiding trial jurisdiction to the district and county courts, and other inferior courts. State Constitution, article 5, §§ 8, 16, 19. These provisions mean that those courts are to exercise that portion of the judicial power allocated to them unimpeded by the supervision of any other tribunal, except in so far as powers of revision may be confided to other tribunals. The jurisdiction of these trial or inferior courts, without any exception, embraces the *"power to hear and determine the matter in controversy according to established rules of law, and to carry the sentence or judgment of the court into execution."*

. . . "Jurisdiction has been broadly defined as the power to hear and determine; to adjudicate concerning the subject matter in a given case; to litigate the controversy between the parties as that controversy is alleged in the petition. Again, jurisdiction is stated to be the authority by which judicial officers take cognizance of and decide causes, *and this includes the power to determine the legal results to follow from the facts pleaded and proven.* Yet again, it is said that 'jurisdiction is power to hear and determine the matter in controversy according to established rules of law, and to carry the sentence or judgment of the court into execution.' Jurisdiction, it is agreed, includes the power to determine either rightfully or wrongfully. It can make no difference how erroneous the decision may be." . . . The text and authorities clearly show that *"jurisdiction"* not only embraces the power to *hear,* but includes as well the authority to *enter a judgment, and to carry that judgment into execution. Moreover, it includes the power to decide as to the law of the case as well as the effect of the facts in issue. . . .*

. . . .

One Court of Civil Appeals or district court will not be permitted to interfere with the previously attached jurisdiction of another court of co-ordinate power,

n.r.e.), *appeal dism'd,* 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986).

nor can an appellate court interfere with the jurisdiction of a district court, except upon appeal in the usual way. Briefly stated, what we here intend to say is that the jurisdiction of trial courts, under the Constitution, once it attaches, embraces every element of judicial power allocated to those tribunals, and includes: (1) *The power to hear the facts,* (2) *the power to decide the issues of fact made by the pleadings,* (3) *the power to decide the questions of law involved,* (4) *the power to enter a judgment on the facts found in accordance with the law as determined by the court,* (5) *and the power to execute the judgment or sentence....*

We are equally clear that the power thus confided to our trial courts must be exercised by them as a matter of nondelegable duty, that they can neither with nor without the consent of parties litigant delegate the decision of any question within their jurisdiction, once that jurisdiction has been lawfully invoked, to another agency or tribunal....

*Morrow,* 62 S.W.2d at 644–45 (citations omitted). Thus, *Morrow* strongly supports our conclusion that the term "jurisdiction," as used in article V, section 8 of the Texas Constitution, refers only to the adjudicative functions of district courts.

### b. Constitutional language

The language used in article V, section 8 also supports this distinction. This provision grants district courts "exclusive, appellate, and original jurisdiction of all *actions, proceedings, and remedies."* The focus of this provision is clearly on the adjudicative authority of district courts to resolve disputes. By contrast, the second paragraph of article V, section 8 confers on district courts "appellate jurisdiction *and general supervisory control* over the County Commissioners Court." This provision underscores the distinction between district courts' adjudicative function (i.e., jurisdiction) and their administrative function (i.e., supervisory control).

Because a district court's administrative function is distinct from its adjudicative function, conferring a specific *administrative* duty on a different court does not diminish the breadth of the district court's *adjudicative* function. Thus, article V, section 8 limits district-court "jurisdiction" only where a specific *adjudicative* function is conferred on another court. Pursuant to article V, section 8, such a grant of jurisdiction may be accomplished either by "this Constitution" or "other law."

Defendants have not directed us to any language in the Texas Constitution that would restrict the adjudicative power of district courts in resolving disputes concerning the practice of law, nor have we found any such restriction. Further, the legislature did not limit district court jurisdiction to adjudicate disputes concerning the practice of law when it promulgated section 81.011 of the State Bar Act. Section 81.011(c) purports to grant the supreme court only "administrative control" over the State Bar. If the legislature had intended to restrict district courts' jurisdiction to adjudicate disputes concerning the practice of law, the appropriate language could easily have been included. For example, section 81.011 would have granted the supreme court administrative control over the State Bar *and original jurisdiction to hear all disputes concerning the practice of law.* We conclude that neither the State Bar Act nor any other statute confers authority to adjudicate disputes concerning the practice of law on any particular court, tribunal, or administrative body other than the district courts of this state. Accordingly, the authority of district courts to hear and decide such cases is not restricted by application of article V, section 8.

### c. Similar Cases

Four recent Texas cases provide additional authority for the proposition that the supreme court's exclusive administrative control over the practice of law and the State Bar does not divest district courts of jurisdiction to adjudicate disputes concerning the practice of law. *See O'Quinn v. State Bar of Texas,* 763 S.W.2d 397 (Tex. 1988); *Musslewhite v. State Bar of Texas,* 786 S.W.2d 437 (Tex.App.—Houston [14th Dist.] 1990, writ denied), *cert. denied,* — U.S. ——, 111 S.Ct. 2891, 115 L.Ed.2d 1056

(1991); *Daves v. State Bar of Texas*, 691 S.W.2d 784 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.), *appeal dism'd*, 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986); *Banales v. Jackson*, 601 S.W.2d 508 (Tex.Civ. App.—Beaumont 1980), *motion for untimely review denied*, 610 S.W.2d 732 (Tex. 1980).

All four cases involved constitutional challenges to administrative actions of the Texas Supreme Court concerning the practice of law. In *O'Quinn, Musslewhite*, and *Daves*, the plaintiffs challenged the constitutionality of disciplinary rules promulgated by the supreme court in its administrative capacity; in *Banales*, the plaintiff challenged the constitutionality of a supreme court order requiring lawyers to pay a one-time fee assessment.

In *O'Quinn*, the trial court declared various disciplinary rules promulgated by the supreme court to be constitutional and denied injunctive relief. 763 S.W.2d at 398. In affirming the trial court's action in a direct appeal, the supreme court's opinion contains no suggestion whatsoever that the trial court might have been without jurisdiction to consider a challenge to the supreme court's administrative action. In the other cases, all three courts of appeals refused to grant the relief sought, but only because they considered the supreme court's administrative actions as binding precedent that could not be reconsidered by a lower court. *See Musslewhite*, 786 S.W.2d at 441; *Daves*, 691 S.W.2d at 789; *Banales*, 601 S.W.2d at 512. None of the courts dismissed the cause at issue for want of jurisdiction. These four cases support the proposition that a district court has jurisdiction to consider a dispute concerning the practice of law. Any "limitations" on the district courts in this area have involved the necessity to follow supreme court authority; the limitations have never been viewed as jurisdictional in nature.

We conclude that article V, section 8 of the Texas Constitution does not divest the district courts of jurisdiction to hear and decide disputes concerning the practice of law merely because the supreme court possesses exclusive administrative control over the State Bar and the practice of law. Accordingly, we sustain Plaintiffs' fifth point of error.

## 2. STANDING/JUSTICIABLE CONTROVERSY

Defendants also argue that Plaintiffs lack "standing" to bring this suit and that the district court's judgment of dismissal may be upheld on that basis.[3] We will consider whether this additional jurisdictional requirement has been satisfied.

The Texas Supreme Court has recently stated that the general test for standing "requires that there '(a) shall be a real controversy between the parties [e.g., a justiciable controversy], which (b) will be actually determined by the judicial declaration [or relief] sought.'" *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993) (quoting *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex.1955)). In order to establish standing, the plaintiff must "allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* Further, when reviewing a trial court's order dismissing a cause for lack of jurisdiction, we must "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Id.*

Considering the first element of standing identified in *Texas Association of Business*, justiciable controversy, we must review Plaintiffs' petition to determine whether they have alleged facts demonstrating that such a controversy exists. As a general proposition, the supreme court has indicated that "[t]he right to maintain an action depends upon the existence of what is termed a cause of action, which involves *the combination of a right on the part of the plaintiff and a violation of such right by defendant.*" *Nobles v. Mar-*

**3.** In its letter announcing and explaining its decision, the district court stated that, although not the basis for its granting of Defendants' pleas to the jurisdiction, it was "concerned" that the interrelated jurisdictional requirements of "standing" and "justiciable controversy" may not have been fulfilled under the facts of the present case.

*cus,* 533 S.W.2d 923, 927 (Tex.1976) (quoting *American Nat'l Ins. Co. v. Hicks,* 35 S.W.2d 128 (Tex.Comm'n App.1931, judgm't adopted)) (emphasis added). In the context of a claim for declaratory relief, a justiciable controversy exists when there is "a real and substantial controversy involving *genuine conflict of tangible interests* and not merely a theoretical dispute." *Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n,* 640 S.W.2d 778, 779–80 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.) (emphasis added). In the context of a claim for injunctive relief, relief is appropriate where there exists a wrongful act, imminent harm, and irreparable injury, and there is an absence of an adequate and complete remedy at law. *Isuani v. Manske–Sheffield Radiology Group,* 805 S.W.2d 602, 605 (Tex.App.—Beaumont 1991, writ denied).

■ In their pleadings in the court below, Plaintiffs alleged that they have a right to free legal services; that they have been denied free legal services in the past and will likely be denied services again in the future; that Defendants have a legal duty to provide such services; and that, "[a]s a result of Defendants' refusal to comply with their duties, Plaintiffs and the class members have been unable to effectively pursue claims or ˉdefend against claims in the increasingly complex legal system of the State of Texas, which is inaccessible to them without legal counsel." In essence, Plaintiffs allege that they have a right that Defendants have violated and are violating; that a genuine conflict of interest exists; and that, as a result of Defendants' harmful conduct, they are without adequate remedy. Construing these pleadings in Plaintiffs' favor, we conclude that such allegations are sufficient to establish a justiciable controversy in the present case.

Considering the second element of standing, that the controversy will be resolved by the relief sought, Plaintiffs have prayed for two separate forms of relief: declaratory relief and injunctive relief. As to Plaintiffs' claim that they are entitled to free legal services, they have requested that the trial court declare their rights to such services under certain supreme court directives and various constitutional and statutory provisions. Such a declaration would, we believe, effectively resolve the controversy presented: whether Plaintiffs are entitled to free legal services. In addition, as to Plaintiffs' claim that they have been and are being denied such services, they have requested the district court to grant an injunction (1) prohibiting Defendants from violating supreme court directives and from violating Plaintiffs' constitutional and statutory rights, and (2) affirmatively requiring Defendants to implement an adequate and effective program to provide the free legal services that Plaintiffs say they are entitled to receive. It appears obvious that granting either form of injunctive relief would resolve the controversy presented.

Accordingly, we conclude that Plaintiffs have alleged sufficient facts and requested sufficient relief to satisfy the requirements of standing and justiciable controversy.[4]

### 3. AUTHORITY TO GRANT RELIEF REQUESTED

In order to render a valid judgment, a trial court must have jurisdiction over the parties, jurisdiction over the subject matter, and jurisdiction to grant the relief requested. *See Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985). Neither party disputes the court's jurisdiction over the parties, and we have concluded above that

---

**4.** In reaching this conclusion, we do not hold that Plaintiffs have alleged sufficient facts to establish the district court's jurisdiction to consider *every* claim mentioned in their brief to this Court. For example, in point of error one, Plaintiffs contend that the district court had jurisdiction to grant declaratory relief as to "whether a mandatory pro bono legal services program is constitutional." Because such a pro-

gram does not now exist and may never exist, such a claim appears to us to be purely hypothetical. If so, no justiciable controversy would exist as to that claim, and the district court would have no jurisdiction to grant the requested declaratory relief. *See Beacon Nat'l Ins. Co. v. Texas State Bd. of Ins.,* 598 S.W.2d 694, 696 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

the district court has jurisdiction over the subject matter. Defendants also argue, however, that the district court does not have authority to grant the relief requested and that the judgment of dismissal may be upheld on that basis.

Plaintiffs requested both declaratory and injunctive relief from the district court. In points of error one and two, they assert that the district court had jurisdiction to grant both forms of relief as to all claims asserted. To determine whether the district court has jurisdiction to grant the relief requested, we must consider this question on two levels. First, we must consider whether, as a general matter, declaratory or injunctive relief is barred in the present case. If not, we must next consider whether either type of relief is barred in the context of the type of claim asserted.

### a. Declaratory and Injunctive Relief in General

Defendants contend initially that the district court lacks jurisdiction to grant either form of relief because the supreme court retains exclusive administrative control over the practice of law. We have concluded above that a district court is not divested of subject-matter jurisdiction to consider a dispute concerning the practice of law merely due to the supreme court's administrative control. Accordingly, we reject this argument.

■ Defendants next contend that declaratory relief is inappropriate. First, Defendants argue that, in order to entertain a suit for declaratory judgment, a court must have power and jurisdiction to settle a controversy by rendering a final judgment. Defendants argue that, because the district court may not enter an order regulating the practice of law, it cannot settle the controversy by entry of a final judgment. We disagree. We recognize that district courts do not have authority to regulate the practice of law. As we will fully explain in the following section, however, not all relief the district court could grant in a dispute such as the present one would constitute regulating the practice of law. Fur-

ther, Plaintiffs need not request a judgment that would settle all issues and resolve the entire controversy. *See Hawkins v. Texas Oil & Gas Corp.*, 724 S.W.2d 878, 890–91 (Tex.App.—Waco 1987, writ ref'd n.r.e.). A district court has authority to render a declaratory judgment as to some issues in a case, even though other issues remain unresolved, provided such judgment serves a "useful purpose" or "removes an uncertainty." *Town of Griffing Park v. City of Port Arthur*, 628 S.W.2d 101, 102 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.); Tex.Civ.Prac. & Rem.Code Ann. § 37.003(c) (West 1986). Accordingly, we reject Defendants' argument.

■ Second, Defendants argue that declaratory relief is inappropriate because Plaintiffs' claims for relief do not qualify as claims that can be brought under sections 37.004 and 37.005 of the Uniform Declaratory Judgments Act. *See* Tex.Civ. Prac. & Rem.Code Ann. §§ 37.004–.005 (West 1986 & Supp.1993). Specifically, Defendants assert that "[i]n the absence of any statutes to be construed, there is no claim for relief under the Uniform Declaratory Judgments Act." We disagree for two reasons. First, Plaintiffs are not required to assert a claim that falls within sections 37.004 and 37.005 to obtain declaratory relief. Section 37.003 specifically provides:

> (a) A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for.
>
> . . . .
>
> (c) *The enumerations in Sections 37.-004 and 37.005 do not limit or restrict the exercise of general powers conferred in this section in any proceeding in which declaratory relief is sought* and a judgment or decree will terminate the controversy or remove an uncertainty.

Tex.Civ.Prac. & Rem.Code Ann. § 37.003 (West 1986) (emphasis added).

■ Second, Plaintiffs *have* requested declaratory relief in connection with the

construction of statutes. Plaintiffs requested the district court to declare rights and other legal relations pursuant to section 106.001 of the Texas Civil Practice and Remedies Code. *See* Tex.Civ.Prac. & Rem. Code Ann. § 106.001 (West 1986 & Supp. 1993).[5] Further, Plaintiffs requested the district court to declare rights and other legal relations pursuant to supreme court directives (e.g., the Texas Disciplinary Rules and the Texas Lawyer's Creed). The supreme court has stated that "our disciplinary rules should be treated like statutes." *O'Quinn,* 763 S.W.2d at 399. Accordingly, Plaintiffs have requested relief that qualifies under section 37.004. Based on the foregoing, we conclude that no *general* bar to declaratory or injunctive relief exists in the present case.

### b. Type of Claim Asserted

Whether declaratory or injunctive relief may be allowed in a particular circumstance depends upon the claim asserted in a particular case. As concluded above, district courts do not have authority to exercise supervisory control over the practice of law in general or the State Bar in particular. Such authority belongs exclusively to the supreme court. We must determine, therefore, in the context of the claims asserted in the present case, whether granting the requested relief would so embody the exercise of supervisory control over the practice of law as to usurp the supreme court's exclusive authority to do so.

Plaintiffs have brought two general types of claims against the State Bar and its individual members: (1) claims to *enforce* a rule promulgated or order issued by the supreme court pursuant to its administrative authority; and (2) claims *challenging* the validity or legality of an act or failure to act by the supreme court pursuant to its administrative authority.

■ **(i) Claims to enforce.** In points of error three and four, Plaintiffs complain that the district court erred in dismissing their cause for lack of jurisdiction because the district court has jurisdiction to consider their claims to enforce supreme court directives. We see no jurisdictional impediment to the district court's granting either declaratory or injunctive relief in response to such a claim. For example, Plaintiffs allege in their pleadings that the Texas Disciplinary Rules and the Texas Lawyer's Creed require lawyers to provide free legal services for the indigent. Based on their interpretation of these supreme court directives, they request that the district court declare their right to such services. We see no reason why the district court would be without jurisdiction to construe these supreme court directives and determine whether they require Defendants to provide Plaintiffs such services. Construing supreme court directives and declaring rights thereunder does not constitute an exercise of supervisory control over the practice of law.

■ Moreover, assuming the trial court determined that Defendants were required to provide such services, we see no jurisdictional bar to allowing the court to enjoin the Defendants from violating a validly issued supreme court directive. Such action would not constitute the exercise of supervisory control over the practice of law by the district court; it would merely constitute enforcement of the supreme court's control.

Accordingly, we conclude that where the claim constitutes a request to *enforce* a supreme court rule or order, the district court has authority to grant either declaratory or injunctive relief. We sustain points of error three and four.

■ **(ii) Claim challenging validity.** In a claim challenging the validity or legality of an act or the omission to act by the supreme court pursuant to its administrative authority, our analysis becomes more

**5.** Defendants contend that § 106.001 does not apply to the present dispute because the State Bar is not a political subdivision of the State of Texas and the individual defendants are not employees of a political subdivision of the State. These are arguments on the merits. Plaintiffs have alleged that the statute applies and have requested declaratory relief thereunder. Plaintiffs' allegations are sufficient to confer jurisdiction on the district court to consider and decide this claim.

complex, and the result depends, at least in part, on the specific type of relief requested.

*Declaratory relief.* Where a plaintiff requests the district court to grant declaratory relief in such a case, we see no impediment to the district court's authority. There is no question that rights may be granted through constitutional or statutory enactments and that the creation of such rights may affect the practice of law. For example, pursuant to the equal protection and equal rights provisions of the Texas Constitution, the State Bar may not discriminate on the basis of sex, race, color, creed, or national origin in promulgating or enforcing licensing requirements. *See* Tex. Const. art. I, §§ 3, 3a. Merely declaring rights created by constitution or statute, however, even if such rights affect the practice of law, does not constitute the exercise of supervisory control over the practice of law. Accordingly, we conclude that the district court has jurisdiction to construe constitutional and statutory provisions and declare rights thereunder in response to a claim that challenges the validity or legality of supreme court action or inaction.

*Injunctive relief.* In addition to requesting that the district court declare that such constitutional and statutory provisions entitle Plaintiffs to free legal services, Plaintiffs also request that the district court issue an injunction prohibiting Defendants from taking any actions in violation of Plaintiffs' rights under these provisions; further, Plaintiffs request the district court to issue a "mandatory" injunction requiring Defendants to affirmatively implement a program that would provide such services. In light of the supreme court's exclusive right to control the regulation of the practice of law, however, we believe the district court is limited in the kind of injunctive relief it can grant in this context.

We conclude that a district court does not have authority to grant relief that would unreasonably usurp the supervisory control vested exclusively in the supreme court. By vesting the supreme court with supervisory control of the practice of law,

the constitution and the State Bar Act grant the supreme court *discretion* to decide issues concerning the State Bar and the practice of law. Whether a district court has authority to grant a particular form of injunctive relief depends, we believe, on whether granting such relief would effectively exercise the kind of supervisory discretion that is vested exclusively in the supreme court.

*Prohibitory injunction.* Prohibitory injunctions merely prohibit a third party from engaging in improper acts that would injure another. The prohibition of an illegal or improper act is not an exercise of supervisory discretion; rather, the enforcement of the legal rights of parties to a bona fide dispute is an essential part of a district court's judicial power. *See Morrow*, 62 S.W.2d at 644–45. In granting a prohibitory injunction, the district court would not infringe on the supreme court's discretion to act and, therefore, would not usurp the supreme court's supervisory control. In the present case, for example, Plaintiffs requested that the district court prohibit Defendants from violating Plaintiffs' alleged constitutional and statutory rights to free legal services. By requesting such relief, Plaintiffs are not asking the district court to assume the supreme court's discretion to act in this regard. To the contrary, even assuming Plaintiffs are entitled to such services, the supreme court would maintain its discretion to adopt any of a number of proper alternatives to ensure that Defendants do not act in violation of Plaintiffs' rights. We conclude, therefore, that granting a prohibitory injunction would generally not usurp the supreme court's powers of supervisory control.

*Mandatory injunction.* The granting of a *mandatory* injunction, on the other hand, would, we think, generally usurp the supreme court's supervisory control. Such action would not merely prevent improper action, it would affirmatively impose specific action. An affirmative requirement to adopt one particular alternative over another would be tantamount to exercising supervisory discretion and would, therefore, usurp the exclusive authority of the su-

**816**

preme court to exercise its supervisory control.

In the present case, Plaintiffs requested two alternative mandatory injunctions in their pleadings. First, Plaintiffs requested "a mandatory injunction requiring Defendants to regulate the State Bar and implement a program ... under which, with limited and enumerated exceptions, each lawyer licensed to practice in Texas would be required to provide some free legal services for poor Texans each year." In the alternative, Plaintiffs requested "a mandatory injunction requiring Defendants ... to implement and regulate an adequate and effective pro bono program ... to assure that all persons have access to competent representation regardless of poverty or position in life." Plaintiffs acknowledge, therefore, that at least two valid alternatives exist that would protect their constitutional and statutory right to free legal services, assuming they are entitled to such services. The choosing of one of these alternatives over the other and granting a mandatory injunction on that basis would constitute exercising the discretion granted exclusively to the supreme court pursuant to its supervisory control. Because the district court has no authority to grant relief that would usurp the supreme court's supervisory control, it is without jurisdiction to grant such relief.

We hold, therefore, that the district court would, if appropriate, have the authority to enjoin Defendants from taking actions contrary to Plaintiffs' constitutional and statutory right to free legal services, if any such right exists; however, the district court would not have the authority to affirmatively impose a particular program to ensure the protection of any such rights. As to the distinct forms of injunctive relief requested by the Plaintiffs in the present case, we think it appropriate to leave for the district court the determination of its jurisdiction to grant the relief requested, should it reach this issue, by applying the foregoing guidelines. We sustain points of error one and two in accordance with the foregoing discussion.

## SANCTIONS

In point of error six, Plaintiffs complain that the district court erred in failing to grant their motion for sanctions. When Plaintiffs originally filed suit on March 14, 1991, they served Defendants with requests for admissions. Defendants filed responses denying many of the requests for admissions on the basis that they lacked sufficient knowledge to admit or deny such requests. After receiving Defendants' responses, Plaintiffs filed a motion to compel answers and for sanctions. The district court denied Plaintiffs' motion.

Because we reverse the district court's dismissal and remand this cause for further proceedings, the district court is entitled to reconsider its prior interlocutory order denying Plaintiffs' motion. *See, e.g., Mathes v. Kelton,* 569 S.W.2d 876, 878 (Tex.1978). Accordingly, we find it unnecessary to address point of error six.

## CONCLUSION

We sustain Plaintiffs' third, fourth, and fifth points of error. As to points of error one and two, we sustain those points to the extent they assert the general proposition that the district court has jurisdiction to grant declaratory and injunctive relief; however, we think it prudent to leave for the district court the determination of its jurisdiction, in light of the foregoing analysis, as to each particular form of relief requested by Plaintiffs. Based on our disposition of points of error one through five, we need not reach point of error six.

We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.