THE STATE BAR OF TEXAS, James Parsons, III, in his capacity as President of the State Bar of Texas and Karen Johnson, in her capacity as Executive Director of the State Bar of Texas, Petitioners,

v.

Maria GOMEZ, Alicia Naveja, and Leonardo Chavez, on Behalf of Themselves and Others Similarly Situated, Respondents.

No. D–4218.

Supreme Court of Texas.

Argued Jan. 20, 1994.

Decided Dec. 22, 1994.

Lynn Liberato, Houston, Linda A. Acevedo, Austin, Alene Ross Levy, Jeffrey T. Nobles, Houston, Broadus A. Spivey, Eric R. Galton, James M. McCormack, Austin, for petitioners.

Virginia Agnew, Charles Herring, Jr., James C. Harrington, Austin, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HECHT and ENOCH, Justices, join.

The sole question presented for our determination is whether the district court below has jurisdiction of this suit, which complains of the failure of the State Bar of Texas to compel member lawyers to provide free legal services to Texans who cannot pay for those services. We conclude that the district court correctly dismissed the case for lack of jurisdiction. Thus, we reverse the judgment of the court of appeals and remand this case to the district court with instructions to dismiss.[1]

After being refused free legal services, Maria Gomez, Alicia Naveja, and Leonardo Chaves, on behalf of themselves and others similarly situated (collectively, Gomez), filed suit in a Travis County district court against the State Bar of Texas and two of its officials at that time, James Parsons III, President, and Karen Johnson, Executive Director (collectively, State Bar). Gomez contends that the State Bar, by not effectively encouraging attorneys to volunteer free legal services, has illegally failed to meet the legal needs of indigent Texans. Specifically, Gomez alleges violations of the following provisions of the Texas Constitution: (1) Article I, Section 13 (open courts); (2) Article I, Section 3 (equal protection); (3) Article I, Section 3a (equal rights); (4) Article I, Section 19 (due course of law); and (5) Article I, Section 29 (inviolate nature of the Bill of Rights). Gomez further asserts violations of the Texas anti-discrimination statute,[2] the Texas Disciplinary Rules of Professional Conduct,[3] and the Texas Lawyer's Creed.[4]

The district court dismissed the case, concluding it lacked jurisdiction under Article V, Section 8, of the Texas Constitution.[5] The court of appeals reversed, holding that the district court had jurisdiction to decide the merits of Gomez's claims, but because of this Court's exclusive authority to regulate the legal profession in Texas, it held that the district court could levy only a prohibitory, and not a mandatory injunction against the State Bar. 856 S.W.2d 804 (Tex.1993). The court of appeals explained:

> We conclude that a district court does not have authority to grant relief that would

---

1. This disposition of the limited issue before us means that we do not, as Justice Gonzalez's concurring opinion does, comment on the merits of the underlying claims.

2. Tex Civ.Prac. & Rem Code § 106.001. This statute generally prohibits the state or its agents from discriminating against persons because of race, religion, color, sex, or national origin. Remedies available to a successful litigant include injunctive relief, attorney's fees, and court costs. Id. § 106.002. A person who knowingly violates this statute is subject to a fine and confinement in the county jail. Id. § 106.003.

3. Tex.Disciplinary R.Prof.Conduct. pmbl. ¶ 6, reprinted in Tex.Gov't Code, tit. 2, subtit. G app. (West Supp.1992) (State Bar Rules art. X, § 9) ("The provision of free legal services to those unable to pay reasonable fees is a moral obli-

gation of each lawyer as well as the profession generally.").

4. Texas Lawyer's Creed—A Mandate for Professionalism (adopted by the Supreme Court of Texas and the Court of Criminal Appeals of Texas, Nov. 7, 1989), reprinted in Texas Rules of Court 487 (West 1994). In the Creed, lawyers are urged to commit themselves "to an adequate and effective pro bono program." Id.

5. Section 8 defines the district courts' jurisdiction, but excepts those cases where jurisdiction has been conferred on some other court. See Tex Const art. V, § 8. The district court held that this Court's power to regulate the practice of law was sufficient to bring this case within Section 8's exception.

unreasonably usurp the supervisory control vested exclusively in the supreme court. By vesting the supreme court with supervisory control of the practice of law, the constitution and the State Bar Act grant the supreme court *discretion* to decide issues concerning the State Bar and the practice of law. Whether a district court has authority to grant a particular form of injunctive relief depends, we believe, on whether granting such relief would effectively exercise the kind of supervisory discretion that is vested exclusively in the supreme court.

856 S.W.2d at 815. We agree with the court of appeals' identification of the issue but not its conclusion.

▆▆▆ The jurisdictional question presented is complex and in some ways unique. As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court. *See Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex.1973). Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–46 (Tex.1993). If the district court lacks jurisdiction, in any of these senses, then its decision would not bind the parties. *See Austin Indep. Sch. Dist.*, 495 S.W.2d at 881 (noting that collateral attacks on a judgment are allowed when the district court lacked jurisdiction). And, a decision that does not bind the parties is, by definition, an advisory opinion prohibited by Texas law. *See Texas Ass'n of Business*, 852 S.W.2d at 444 (citing Article II, Section 1, of the Texas Constitution as prohibiting advisory opinions).

▆▆▆ The unique aspect of this jurisdictional inquiry, as the court of appeals recognized, arises out of this Court's power to regulate the practice of law in the State of Texas. This power is derived from both statutory and inherent powers. The primary statutory grant of power is found in the State Bar Act, which gives the Court administrative control over the State Bar and provides a statutory mechanism for promulgating regulations governing the practice of law. *See* TEX.GOV'T CODE § 81.011(c). The other source of this court's power to regulate the practice of law in this state, its inherent power, is not secured by any legislative grant or specific constitutional provision, but is necessarily implied to enable the Court to discharge its constitutionally imposed duties. *See Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex.1979) (noting that doctrine of inherent power is derived, in part, from the separation of powers dictated by Article II, Section 1 of the Texas Constitution). Those duties include our obligation, as the head of the judicial department, to regulate judicial affairs. Because the admission and practice of Texas attorneys is inextricably intertwined with the administration of justice, the Court must have the power to regulate these activities in order to fulfill its constitutional role. *See generally* JIM R. CARRIGAN, INHERENT POWERS OF THE COURTS 2 (1973) (defining inherent powers as those "reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective"). The Court's inherent powers, such as the power to regulate the practice of law, are not *jurisdictional* powers. *See Eichelberger*, 582 S.W.2d at 399. These powers are *administrative* powers, necessary to the preservation of the judiciary's independence and integrity.

▆▆▆ Because the Court's power to regulate the practice of law is an administrative one, the exercise of that power does not in and of itself deprive lower courts of general subject matter jurisdiction over challenges to that governance. They do not, however, have jurisdiction over *all* such challenges because in every individual case, jurisdiction also depends on justiciability. And, as the court of appeals acknowledged, for a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought. 856 S.W.2d 804, 811 (citing *Texas Ass'n of Business*, 852 S.W.2d at 446 and *Board of Water Eng'rs v. City of San Antonio*, 155

Tex. 111, 283 S.W.2d 722, 724 (1955)). While we do not find it necessary to set the precise boundaries of the district court's jurisdiction under these circumstances, we hold that these facts do not present a justiciable controversy and that the district court therefore has no jurisdiction.

■ Gomez seeks to compel either the State Bar or this Court to implement a mandatory pro bono program for Texas lawyers. To the extent a remedy is sought against the State Bar, Gomez seeks relief from an entity that is powerless, acting alone, to implement that remedy. The State Bar's authority is limited to proposing regulations to this Court, which may accept or reject any recommendation, in whole or in part. *See* TEX. GOV'T CODE § 81.024(a). For example, when the latest amendment to the rules governing lawyer advertising was recommended by the State Bar, we modified the proposed amendment before promulgation. *See* Amended Order of Promulgation and Adoption of Disciplinary Rules, West's Texas Cases Advance Sheet 884–885 issue 49, pp. LXIX–LXXXI. Thus, the relief sought against the State Bar, even if granted by the trial court, could not resolve the dispute between these litigants.

■ Moreover, to the extent the remedies are sought against the Supreme Court, they would clearly impinge on the Court's exclusive authority to regulate the practice of law. The Legislature itself implicitly acknowledged the Court's fundamental authority in this area when it enacted the State Bar Act as *an aid* to the Court in carrying out this function. *See* TEX.GOV'T CODE § 81.011(b). No subordinate court in Texas has the power to usurp our authority or responsibility in this area. The dissenting justices acknowledge this limitation when they say, "An injunction mandating this court or the State Bar to implement a mandatory pro bono program would be improper. It would inappropriately involve the district court in the regulation of the practice of law." *Infra*, 891 S.W.2d at 252 (citations omitted).

This is not to say that all remedies bearing upon the regulation of the legal profession would be unacceptable infringements on the inherent powers of the Court. Had this Court actually promulgated rules establishing a pro bono program and had Gomez challenged the constitutionality of such rules, the district court would have jurisdiction to decide, in the first instance, whether such rules met constitutional standards. *See* *O'Quinn v. State Bar*, 763 S.W.2d 397 (Tex. 1988) (upholding the trial court's decision on a constitutional challenge to the rules of disciplinary conduct promulgated by the Court). In due course, we would review any adverse determination in our adjudicative capacity. *See Cameron v. Greenhill*, 582 S.W.2d 775, 777 & n. 3 (Tex.1979) (holding that the Court could both promulgate a rule and determine its constitutionality). The important distinction between such a case and the one at hand is that in the former case, the district court would not be cast in the impermissible role of effectively promulgating policies and regulations governing Texas lawyers. Such a case would be justiciable because the district court would be capable of rendering a judgment that accords the parties complete relief, subject of course to appellate review.

But when, as here, the essence of a complaint is that this Court has failed to establish rules governing some aspect of lawyer conduct, a district court has no authority to assume this Court's authority to regulate the legal profession. This prohibition includes the rendition of orders that would, as a practical matter, preempt this Court's authority. Because the district court cannot effect a remedy that would resolve this dispute, this case does not present a justiciable controversy. Once again, acknowledging the limitations on the district court's authority in this area, the dissenting justices nevertheless contend, "The district court does, however, have jurisdiction to issue a mandatory injunction which requires the State Bar to implement a more effective *voluntary* pro bono program calculated to meet constitutional and statutory demands which may exist." *Infra*, 891 S.W.2d at 252 (emphasis added). We are at a loss to understand, and the dissenting justices do not explain, how a mandatory injunction to enforce a *voluntary* program could ever be enforced by any court. By limiting the district court's jurisdiction to such illusory relief, the dissenting justices have, in effect, conceded that the

trial court cannot grant plaintiffs the real relief they seek.

Our decision that the district court lacks jurisdiction does not, however, leave the parties without a forum in which to seek redress of their grievances. This Court, in the exercise of its constitutional responsibilities, wants and needs input from interested persons concerning its supervisory responsibility over Texas lawyers. Ordinarily, interested parties would be free to informally petition this Court in its administrative capacity, to urge reconsideration of the proper constitutional mandates for this Court's regulation of attorney conduct. However, given the potentially far-reaching effects of this particular challenge to our scheme of regulation, we direct that this matter be placed on the Court's administrative agenda for further consideration. All interested parties have until April 14, 1995, to submit their written arguments on the merits of the underlying claims. *Cf. Barger v. Brock,* 535 S.W.2d 337, 342 (Tenn.1976) (ordering a lower court to dismiss a challenge to the Supreme Court's rules but directing the lower court to forward the petitions for further consideration as a direct motion in the Supreme Court).

Accordingly, we reverse the judgment of the court of appeals and remand to the district court with instructions to dismiss for want of jurisdiction.

DOGGETT, J., dissents.

GONZALEZ, Justice, concurring.

This case presents significant issues of public policy. Respondents seek a court declaration that indigent citizens of our State are entitled to free legal services in civil cases. They also seek an injunction that would require the State Bar of Texas to implement a program mandating pro bono legal services from all attorneys licensed to practice law in Texas.[1] For the reasons stated in the majority opinion, I agree with the trial court and this Court that this case does not present a justiciable controversy within the trial court's jurisdiction. I thus concur in the judgment.

I write separately because I disagree with the Court prolonging resolution of the mandatory pro bono issue by placing the matter "on the Court's administrative agenda for further consideration." 891 S.W.2d at 247. This procedure is unnecessary, and it gives Respondents false hope that a majority of the Court is seriously considering implementing such a sweeping change in the practice of law in Texas. As for the invitation for interested parties to submit more briefs to the Court, I think that any information which anyone gives the Court will merely duplicate what we already have for determining the merits of Respondents' request. The issue of how to provide legal services for the indigent is a problem in our society that has been widely debated and studied. More hearings, briefs, or argument before us will be of little utility.

Mandating any program for legal services to the poor is a political question, over which this Court in its administrative capacity and the Legislature would have jurisdiction. However, in my opinion, any attempt to draft and implement such a program would unnecessarily divert the Court from its primary business of adjudicating disputes. The Legislature is better suited to undertake the activities necessary for drafting and implementing a program to provide indigents legal services. Different program options, as well as their legal and constitutional ramifications, will need to be considered. Since the problem of access to legal services faces society as a whole, the burden of resolving it does not solely rest on the legal profession.

I acknowledge that a very real problem exists for individuals who seek legal representation but lack the financial resources to retain counsel. Studies clearly document that our poor citizens need greater access to legal services. *See, e.g.,* COMMITTEE ON LEGAL SERVICES TO THE POOR IN CIVIL MATTERS, STATE BAR OF TEXAS, REPORT ON MANDATORY PRO BONO (1991); STATE BAR OF TEXAS ET AL., LEGAL NEEDS OF THE POOR ASSESSMENT PROJECT (1991). This need led the Court to create the Texas Equal Access to Justice foundation in 1984 to administer the volun-

1. Respondents deny that they are seeking a mandatory pro bono program, but they do not suggest any other method of providing legal services to the indigent.

tary IOLTA (Interest on Lawyers' Trust' Accounts) program.[2] *See* TEXAS EQUAL ACCESS TO JUSTICE PROGRAM §§ 1–9 (effective May 19, 1994), *reprinted in* TEX.GOV'T CODE, tit. 2, subtit. G app. (STATE BAR RULES art. XI, §§ 1–9). In December, 1988, we signed an order that made the IOLTA program mandatory. *Id.* (amended December 13, 1988). We took this action under our authority to regulate the practice of law.

Realistically, the Court has progressed as far as it can to extend legal services to the poor. A mandatory pro bono program is quite different from the IOLTA program. This Court lacks the resources and/or the political will to attempt further resolution of the profound problem of providing legal services for indigent citizens. I would tell Respondents frankly that we are not going to order mandatory pro bono. The Legislature is better suited to tackle this social problem.

HIGHTOWER, Justice, joined by GAMMAGE and SPECTOR, Justices, dissenting.

Because I believe that the district court has jurisdiction of this suit and that the Court would effectively deny the Plaintiffs' access to a meaningful forum in which to seek redress of their grievances, I respectfully dissent.

I.

The jurisdictional inquiry begins with Article V, Section 8 of the Texas Constitution which provides in part:

District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings and remedies, *except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal or administrative body.*

Tex. Const. art. V, § 8 (emphasis added). The district court held that it lacked jurisdic-

tion because the legislature had conferred jurisdiction over matters concerning the administration of the State Bar upon this Court in the State Bar Act. *See* Tex.Gov't Code Ann. § 81.011(c) (West 1988). I disagree.

What the legislature conferred upon this Court was "*administrative control* over the state bar." Tex.Gov't Code Ann. § 81.011(c) (West 1988) (emphasis added). "Jurisdiction" within the meaning of Article V, Section 8 includes only the *judicial* powers of the courts. These judicial powers are typically the only ones at issue when the Court makes statements such as: "[J]udicial power is divided among the various named courts by means of express grants of 'jurisdiction.'" *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex.1979) (citing *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933)). But Texas courts have duties in addition to their judicial responsibilities.

I do not disagree that this Court's inherent power to regulate the practice of law is more expansive than the administrative authority that the legislature has "granted" to us. *See Daves v. State Bar,* 691 S.W.2d 784 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.) (noting the Court's inherent power to adopt rules governing the practice of law by extra-statutory means); *see also* Tex.Gov't Code Ann. § 81.011(b) (West 1988) (stating that the State Bar was a legislative creation passed to *aid* the Court in exercising its judicial power). *See State Bar v. Heard,* 603 S.W.2d 829, 831 (Tex.1980). Even so, it does not necessarily follow that this inherent power is so great that it deprives the state's courts of general jurisdiction of the authority to hear a challenge pertaining to the governance of the legal profession.

The proper question to determine whether the district court has jurisdiction over this case is not whether this Court, in its administrative capacity, *could* act in a manner that would decide or moot the issues raised. Rather, three questions must be asked: (1)

---

**2.** The IOLTA foundation administers a program wherein lawyers convert their non-interest bearing trust accounts to interest bearing accounts. Financial institutions remit all interest earned on IOLTA accounts to the IOLTA foundation. The foundation in turn channels money to organiza-

tions that deliver civil legal services to the poor. Since inception of the mandatory IOLTA program, the foundation has distributed approximately $42 million to assist people unable to afford an attorney in civil actions.

whether the State Bar and its officers are the proper parties in this case; (2) if so, whether the district court is an appropriate forum to hear a matter over which this Court exercises such extensive authority; and (3) whether the failure to act, as opposed to an affirmative action, nevertheless presents an issue over which the district court may exercise authority. I would answer all three questions in the affirmative.

However couched, the Plaintiffs' claims are actually directed not so much at the State Bar[1] as at an alleged deficiency in the current system of lawyer regulation established by this Court and the legislature. This Court, both by legislative grant and its inherent powers, possesses authority to regulate the practice of law and exercises control over the State Bar. *See* Tex.Gov't Code Ann. §§ 81.011, 81.024(a) (West 1988) (clarifying this Court's supervisory role over the State Bar); *State Bar v. Heard*, 603 S.W.2d at 831 ("The State Bar Act was passed in aid of this court's exercise of its inherent power to regulate the practice of law.") (footnotes omitted). The legislature recognized the Court's fundamental responsibility in this area when it passed the State Bar Act "in aid of the judicial department's powers under the constitution to regulate the practice of law." Tex.Gov't Code Ann. § 81.011(b) (West 1988).

The State Bar's actual power in this regard is limited to proposing regulations to this Court, which could reject or amend any such recommendation. Under a strict concept of justiciability, one could argue that there is no justiciable controversy between the State Bar and the Plaintiffs. *See Board of Water Eng'rs v. City of San Antonio*, 155

Tex. 111, 283 S.W.2d 722, 724 (1955) (defining "justiciable controversy" as the requirement that there shall be a real controversy between the parties that will actually be determined by the judicial declaration sought). On the other hand, more modern notions of justiciability would acknowledge that the State Bar is an acceptable "surrogate defendant" for the Court in this matter. In fact, the State Bar has served as such a surrogate in several recent cases. *See, e.g., O'Quinn v. State Bar*, 763 S.W.2d 397 (Tex.1988); *State Bar v. Tinning*, 875 S.W.2d 403 (Tex.App.—Corpus Christi 1994, writ denied); *Musslewhite v. State Bar*, 786 S.W.2d 437 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Daves v. State Bar*, 691 S.W.2d 784 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.).[2] For these reasons, I conclude that the district court's jurisdiction is not suspect on this basis.

## II.

Next we must decide whether the district court has subject matter jurisdiction over a challenge to an administrative decision of this Court. I believe the answer is yes. Promulgating court rules in our administrative capacity does not and cannot imply a concomitant determination by this Court in its judicial capacity that such rules are constitutional in every respect. Hopefully, this Court does not abandon its collective knowledge of the Constitution when it exercises its rulemaking authority, and surely it would not knowingly promulgate any rule it regarded as violating the United States or Texas Constitutions. However, we are not omniscient. It is simply beyond the capacity of this or

---

**1.** The current pro bono policy was adopted by the State Bar of Texas Board of Directors in May 1992. The policy includes an aspirational goal of fifty (50) hours per year and an annual voluntary pro bono reporting system.

**2.** We need not decide in this case whether Plaintiffs could have proceeded against this Court itself. Like other state courts of last resort, we have been named defendants in district court at least once before. *Cameron v. Greenhill*, 582 S.W.2d 775 (Tex.1979); *see also CWA Local 1044 v. Chief Justice of the Sup. Ct.*, 118 N.J. 495, 572 A.2d 613 (1990) (challenging a New Jersey Supreme Court decision made in the course of labor negotiations with its judicial employees);

*American Trial Lawyers Ass'n v. New Jersey Sup. Ct.*, 66 N.J. 258, 330 A.2d 350 (1974) (challenging a New Jersey Supreme Court order limiting contingent attorney's fees in certain tort cases); *Vermont Sup. Ct. Admin. Directive No. 17 v. Vermont Sup. Ct.*, 154 Vt. 217, 576 A.2d 127 (1990) (challenging a Vermont Supreme Court order postponing civil jury trials due to budgetary shortfalls). But some jurisdictions expressly proscribe suing the state's highest court. *See, e.g., Goetz v. Harrison*, 153 Mont. 403, 457 P.2d 911 (1969) (holding that a lower court has no supervisory control over the Supreme Court and thus cannot entertain a challenge to a Supreme Court rule relating to bar admissions).

any other court to envision every possible constitutional ramification or factual application of its orders or rules, particularly before it has the benefit of a case and controversy that vigorously explores both sides of the issues. *See* Order of the Supreme Court of February 28, 1966, Transmitting Amendments to Rules of Civil Procedure, 383 U.S. 1029, 1032 (Black, J., dissenting) (stating that "the Court's transmittal does not carry with it a decision that the amended rules are all constitutional" because "such a decision would be the equivalent of an advisory opinion which, I assume the Court would unanimously agree, we are without constitutional power to give."); *Grand Bahama Petroleum Co. v. Canadian Transp. Agencies,* 450 F.Supp. 447, 450 (W.D.Wash.1978) (holding that the district court had jurisdiction to consider a constitutional challenge to a federal rule of civil procedure, noting that "[w]hile the [United States Supreme] Court certainly considers the constitutionality of a rule recommended by a committee, it is not possible for its members to anticipate every constitutional objection."). This is especially true when, as here, it is the *failure* to provide for some constitutionally mandated system that is alleged.

Nor would the mere determination by the district court that the current system is constitutionally deficient invade this Court's inherent power to regulate the practice of law. We have no inherent power to create a system that violates the Constitution, just as the legislature has no power to pass unconstitutional statutes. *See Reese v. State,* 772 S.W.2d 288, 290 (Tex.App.—Waco 1989, pet. ref'd) (reasoning that a court may not enact a procedural rule that conflicts with a provision of the constitution); *Picard v. State,* 631 S.W.2d 761, 763 (Tex.App.—Beaumont 1981, no writ) (holding that the rule-making authority of any court may not conflict with constitutional provisions and that any uncon-

stitutional rule is inoperative). For example, the Constitution provides that this Court may not appoint to the State Commission on Judicial Conduct more than one judge from the same Supreme Judicial District. Tex. Const. art. V, § 1–a(2). If the Court breached this restriction, surely it would be answerable to the legal system. If this be conceded, there can be only two possible mechanisms to enforce constitutional restrictions on the Court acting in its administrative capacity: a suit against the Court in a lower court or an original proceeding in the Court itself. Either of these courses is permissible, but at least one is necessary. Under the Court's analysis, however, there is no mechanism to enforce constitutional restrictions on the Court acting in its administrative capacity. In this case, the Plaintiffs are left without a meaningful forum in which to seek redress of their grievances. The Court has directed "that this matter be placed on the Court's administrative agenda for further consideration." In essence, the Court suggests that the Plaintiffs directly petition the Court for redress of their "complaint." However, the Court is not required to consider or take any action on the "petition"—ever! Obviously this does not constitute a meaningful forum.[3] It is also unclear whether the Plaintiffs could seek redress of their grievances in the Legislature. Based upon the Court's expansive description of its inherent powers to regulate the practice of law, it is doubtful that the Legislature has the power to impose a mandatory pro bono system upon the State Bar.

Some state supreme courts have expressly provided for the filing of petitions challenging their orders and rules directly with that court. *See, e.g., Aldridge v. Watling Ladder Co.,* 275 Ark. 225, 628 S.W.2d 322, 323 (1982) (holding that a case involving construction of supreme court rule should have been certified to supreme court under Supreme Court Rule 29(1)(c)); *Goetz v. Harrison,* 153 Mont.

---

**3.** It is unclear whether the Court is creating a "parallel administrative docket" in which interested persons could petition the Court for various forms of relief. Are these "petitioners" entitled to timely consideration of their petition and oral argument? *See Barger v. Brock,* 535 S.W.2d 337, 342 (Tenn.1976) ("[I]n order that the parties may have their insistences considered, we direct that all pleadings in this cause be delivered to the

Clerk of this Court at Nashville forthwith. This Court will treat the pleadings as constituting a motion to vacate or modify Rule 42. This matter will be docketed for oral argument, in Knoxville, at the heel of the calendar on 7 May 1976. Briefs will be filed with the Clerk in Nashville by 23 April 1976. The sole issue before the Court is the constitutionality of Rule 42.").

403, 457 P.2d 911, 912 (1969) (stating that questions involving the constitutionality of a supreme court rule should be presented to the supreme court in an "appropriate original proceeding.")

This Court has, with narrow exceptions, never provided such a procedure.[4] Because supreme court rules must comport with the Constitution and because the judicial branch is entrusted with interpreting the Constitution, jurisdiction to consider challenges to rules must exist at the district court level. This view comports with the general understanding of Texas law, and with what is probably the majority rule in most of the states that have been confronted with the issue. *See, e.g., Beard v. North Carolina State Bar,* 320 N.C. 126, 357 S.E.2d 694, 695 (1987) (holding that a "direct challenge of the constitutionality of an order of this Court . . . must be litigated as an original action in the General Court of Justice."); *Berberian v. Kane,* 425 A.2d 527, 528 n. 2 (R.I.1981) (holding that a rule may be challenged in a case seeking declaratory judgment that the rule was unconstitutional).

### III.

The question remains whether this case is nonjusticiable because the district court does not have jurisdiction to grant the relief sought. Plaintiffs seek a declaratory judgment that the State Bar is violating their constitutional and statutory rights. Among other things, Plaintiffs requested that the district court "[d]eclare that the official policies, actions, and failure to act alleged herein, which involve the refusal to Defendants to adequately provide for the legal services needed by Plaintiffs and the class, violate the Texas Constitution and Tex.Civ.Prac. & Rem.Code § 106.001." Plaintiffs also seek an injunction prohibiting the State Bar from continuing to violate the rights of indigent citizens and an injunction mandating the State Bar to implement an adequate and more effective pro bono program. First, declaratory relief is proper whether or not further relief is or could be claimed. *See* Tex.

Civ.Prac. & Rem.Code Ann. § 37.003(a). The district court has the authority to render a judgment declaring the constitutional and statutory rights of Plaintiffs and, also, to declare whether such rights have been violated. See Tex.Civ.Prac. & Rem.Code Ann. § 37.003. I fail to see the distinction between the district court's jurisdiction to determine the constitutionality of the official policies, actions, and failure to act caused by the refusal of the State Bar to adequately provide for the legal services needed by Plaintiffs *and* the district court's jurisdiction to determine the constitutionality of rules proposed by the State Bar and promulgated by this Court. In both cases, the district court's determination could be reviewed by this Court in its adjudicative capacity. Contrary to the Court's assertion, the determination of the constitutionality of the refusal to the State Bar to adequately provide for the legal services needed by Plaintiffs would not cast the district court in the role of effectively promulgating policies and regulations governing Texas lawyers.

Concerning injunctive relief, a prohibitory injunction, one prohibiting the State Bar from continuing to violate Plaintiffs' rights, would be proper in the event the district court holds such rights are being violated. It is axiomatic that a court has the power to enforce its orders determining the legal rights of the parties. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 644–45 (1933). "Reason and experience argue that courts empowered . . . [to decide] constitutional mandates cannot be left without the means to order appropriate relief." *Terrazas v. Ramirez,* 829 S.W.2d 712, 718 (Tex.1991). Furthermore, a mandatory injunction could also be proper. *See Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 399 (Tex.1989); *Edgewood Indep. Sch. Dist. v. Kirby,* 804 S.W.2d 491, 494 (Tex.1991); *Terrazas,* 829 S.W.2d at 717–20. However, courts should tread lightly when dealing with powers traditionally reserved to other areas of government. For example, in *Terrazas,* although we held that the courts could order apportionment, we were careful to state,

---

**4.** Our lack of an original proceeding may actually be salutary. This Court's resolution of complex questions concerning the constitutionality of

our rules would most likely be enhanced by the fuller development of issues and arguments that usually attend the appellate process.

[T]hat power ought to be used only after investigation and careful consideration of the many, diverse interests affected, after due deference to the Legislature to rectify its own statutes, and after due regard for the effect of the court's order on the election process.

829 S.W.2d at 718. Likewise, in *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d at 399, we stated, "Although we have ruled the school financing system to be unconstitutional, we do not now instruct the legislature as to the specifics of the legislation it should enact. . . ."

Moreover, a court should not overstep the line between adjudication and regulation. Regulation of the practice of law is within the exclusive control of this Court. Tex.Gov't Code Ann. § 81.011(c) (Vernon 1986); *Daves v. State Bar,* 691 S.W.2d 784, 788–89 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.). An injunction mandating this Court or the State Bar to implement a mandatory pro bono program would be improper. It would inappropriately involve the district court in the regulation of the practice of law. *See Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d at 399; *Edgewood Indep. Sch. Dist. v. Kirby,* 804 S.W.2d at 493–94. The district court does, however, have jurisdiction to issue a mandatory injunction which requires the State Bar to propose and implement a more effective voluntary pro bono program calculated to meet constitutional and statutory demands which may exist. *Id.* In addition, the district court would have jurisdiction to issue a mandatory injunction which requires the State Bar to propose regulations creating a mandatory pro bono program to this Court.

Finally the question remains whether this case is nonjusticiable because it alleges constitutional sins of omission. I believe that the Plaintiffs' complaint that the State Bar has failed to act as required by various constitutional and statutory provisions does not affect the justiciability of their claims. Distinctions between an act and an omission in this context are not helpful. *See generally* Lisa E. Heinzerling, Note, *Actionable Inaction: Section 1983 Liability for Failure to Act,* 53 U.CHI.L.REV. 1048, 1057–63 (1986) (criticizing the entire act/omission analysis in the context of governmental responsibilities under the Constitution, primarily because its tort-based reasoning is ill-suited to explain existing doctrine). If this Court concluded that the district court lacked jurisdiction over the Plaintiffs' claims because they allege an omission rather than an act, the Plaintiffs could simply recast their allegations. Thus, the difference between acts and omissions in this highly unusual context seems semantic. *See* David A. Fischer, *Causation in Fact in Omission Cases,* 1992 UTAH L.REV. 1335, 1339 ("[A]s a matter of semantics, any omission can be characterized as part of a larger encompassing act."). The mere fact that the Plaintiffs have alleged an unconstitutional omission cannot deprive the district court of jurisdiction when it clearly would have jurisdiction to review an unconstitutional act.

For the foregoing reasons, I respectfully dissent.