# Supreme Court of Texas

No. 23-0694

Brent Edward Webster,

*Petitioner*,

v.

Commission for Lawyer Discipline,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

JUSTICE BOYD, joined by JUSTICE LEHRMANN, dissenting.

This disciplinary proceeding against Texas attorney Brent Webster[1] could easily fail for many reasons. But the constitutional

---

[1] Webster is a Texas licensed attorney who serves as the First Assistant Attorney General, a position that is statutorily empowered to perform the attorney general's duties if the attorney general "is absent or unable to act." TEX. GOV'T CODE § 402.001(a). As with all the assistants who have been delegated authority to act on the attorney general's behalf, Webster has "no constitutional or statutory authority that is not derived directly from the Attorney General himself." *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 123 (Tex. 1988); *see also State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 931 (Tex. Crim. App. 1994) (en banc) ("An assistant attorney general operates under the direct supervision of the Attorney General and exercises no independent executive power.").

separation of powers is not one of them. This doctrine prohibits the legislative, executive, and judicial "departments" from exercising "any power properly attached to either of the others." TEX. CONST. art. II § 1.[2] It does not separate powers that exist *within* a single department or restrict the *means* by which a department may exercise a power it properly possesses.[3] Perhaps some other legal doctrine could prohibit the judicial branch from doing "collaterally" that which it can indisputably do "directly" (to use the Court's new-found terminology), but the separation of powers *between* the branches does not. If (as the Court concedes) the judicial branch has inherent power to discipline an executive-branch attorney for engaging in professional misconduct, it may—consistent with the separation-of-powers doctrine—discipline that attorney through any lawful exercise of that power. The Court's freshly minted direct/collateral distinction is unheard of in separation-of-powers jurisprudence. It lacks both legal support and logical sense. I must respectfully dissent.

This case pits the executive branch's power to represent the state in litigation, as exercised through the attorney general and his

---

[2] *See generally City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 591 (Tex. 2015); *In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012); *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *State Bd. of Ins. v. Betts*, 308 S.W.2d 846, 851 (1958).

[3] *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 72 (Tex. 2000) ("[T]he Constitution only guarantees the separation of the state legislative, executive, and judicial branches of government."); *see also Clinton v. Jones*, 520 U.S. 681, 699 (1997) ("The doctrine of separation of powers is concerned with the allocation of official power among the three coequal branches of our Government.").

assistants,[4] against the judicial branch's power to regulate the practice of law,[5] as exercised (initially) through the state bar and the commission for lawyer discipline.[6] In broad terms, the issue is this: If the executive

[4] The Texas attorney general, an elected officer within the executive branch of government, possesses the exclusive power "to represent the State in civil litigation." *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); *cf.* TEX. CONST. art. IV, §§ 1, 22; TEX. GOV'T CODE § 402.021. He (and, by delegation, his assistants) have "broad discretionary power in carrying out his responsibility to represent the State," *Perry*, 67 S.W.3d at 92 (citing *Terrazas v. Ramirez*, 829 S.W.2d 712, 722 (Tex. 1991)), including "the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit," *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943) (citation omitted). The judicial branch "cannot control his judgment," for example, by requiring him to file a suit he has determined should not be filed. *Lewright v. Bell*, 63 S.W. 623, 624 (Tex. 1901).

[5] The judicial branch's power to regulate the practice of law is one of its "*administrative* powers, necessary to the preservation of the judiciary's independence and integrity." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). These are inherent constitutional powers the judicial branch "may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979) (describing the inherent powers as "woven into the fabric of the constitution by virtue of their origin in the common law and the mandate of TEX. CONST. Art. II, Sec. 1, of the separation of powers between three co-equal branches"); *see Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020) ("Courts also possess inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system." (citing *Eichelberger*, 582 S.W.2d at 399)). They include the power "to regulate the practice of law in Texas," *In re Nolo Press/Folk L., Inc.*, 991 S.W.2d 768, 769 (Tex. 1999), including "the admission and practice of Texas attorneys," *Gomez*, 891 S.W.2d at 245.

[6] The commission for lawyer discipline is a "standing committee of the state bar" composed of members appointed by this Court and the bar's elected president. TEX. GOV'T CODE § 81.076(b). The commission's chief disciplinary counsel serves "as administrator of the state bar's grievance procedure." *Id.* § 81.076(g). In cooperation with district grievance committees, the chief disciplinary counsel reviews and investigates complaints against attorneys and decides on an appropriate sanction when "just cause" exists. *Id.*

branch possesses the exclusive power to represent the state in litigation and to exercise broad discretion "regarding the filing of a suit," *Agey*, 172 S.W.2d at 974 (citation omitted), may the judicial branch discipline an executive-branch attorney who violates a disciplinary rule in the exercise of that discretion? The Court concedes the answer is Yes, agreeing that the Texas Disciplinary Rules of Professional Conduct "apply to all Texas lawyers, including the attorney general and his staff." *Ante* at 2.

I agree. To be sure, the judicial branch's power is not unlimited.[7] But neither is the executive branch's power, including that exercised by the attorney general and his assistants.[8] As we just recently confirmed,

---

§ 81.075(a), (e). An attorney against whom a complaint is filed may elect to have the matter determined through these disciplinary proceedings or through litigation in a district court. *Id.* § 81.075(b)(2). In either case, the attorney has a right to appeal ultimately to this Court. *Id.* § 81.0751. These disciplinary procedures exist "[i]n furtherance of [this Court's] powers to supervise the conduct of attorneys." *Id.* § 81.072(a). This process through which the commission conducts disciplinary proceedings to address complaints of attorney misconduct is what the Court refers to today as "collateral attacks" and "targeting" of an attorney against whom a complaint is filed. *Ante* at 3, 36.

[7] The Texas Constitution "has always granted substantial authority to the legislature to regulate important aspects of how the judiciary serves the People of our State," and "the separation of powers requires that we respect the other branches' checks on the judiciary and not just our checks on them." *In re Dallas County*, 697 S.W.3d 142, 162–63 (Tex. 2024).

[8] The attorney general and his assistants, for example, cannot exercise their authority to resolve a lawsuit in a way that usurps a legislative or judicial power. *See Perry*, 67 S.W.3d at 93 ("[O]nly courts have the authority to effectuate a valid congressional reapportionment plan unless or until the Legislature acts." (citing *Terrazas*, 829 S.W.2d at 720)); *Cofer*, 754 S.W.2d at 125 ("While the Attorney General has the right and duty to *represent* the state agencies, he has no constitutional or statutory authority to exercise powers

4

their "authority to *represent* the state . . . does not necessarily include the authority to independently decide whether to *institute* a suit on the state's behalf." *State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022) (per curiam).[9] Nor do they have unlimited power to decide what to assert, or not assert, within a suit they file.[10] Both the legislative and judicial branches may control the contents of the attorney general's pleadings by, for example, prohibiting claims and allegations that are "groundless and brought in bad faith" or "groundless and brought for the

---

that belong to the Legislature or that have been delegated by the Legislature to administrative agencies.").

[9] As we also just recently confirmed, the legislative and judicial branches possess the power to regulate whether the attorney general may or may not file a particular suit. *See, e.g.*, *State v. Zurawski*, 690 S.W.3d 644, 659 (Tex. 2024) (noting the attorney general "has no authority to enforce the Heartbeat Act"); *In re Abbott*, 601 S.W.3d 802, 812 (Tex. 2020) (noting the attorney general lacks independent authority to bring criminal prosecution against judges).

[10] As the Court explains, we have "never drawn a line between" the attorney general's "authority to file suit and his authority to populate the suit with the representations that give it force and led him to file it." *Ante* at 29. "To the contrary," the Court explains, "*both* actions are privileged to the same degree." *Id.* As an obvious example, our pleading rules require that all petitions contain "a statement in plain and concise language of the plaintiff's cause of action," TEX. R. CIV. P. 45(b), "state the grounds therefor [and] the relief or order sought," *id.* at 21(a), include "a short statement of the cause of action sufficient to give fair notice of the claim" and "a statement that the damages sought are within the jurisdictional limits of the court," *id.* at 47(a), (b), "state the names of the parties and their residences, if known," *id.* at 79, and "allege in the first numbered paragraph of the original petition whether discovery is intended to be conducted under Level 1, 2, or 3," *id.* at 190.1. No one disputes that the judicial branch may dictate the contents of the attorney general's pleadings by imposing these requirements, or that it may enforce these requirements against the attorney general as it may against any private-sector attorney.

5

purpose of harassment," or "fictitious," or "false." TEX. R. CIV. P. 13; *see* TEX. CIV. PRAC. & REM. CODE § 9.011.[11] As the Court agrees today, the judicial branch can scrutinize the contents of the attorney general's pleadings and impose discipline if they are "objectionable, whether for legal or ethical reasons." *Ante* at 30.[12] In short, the separation of powers does not prevent the judicial branch from regulating the pleadings an executive-branch attorney files in a court.

But the Court announces today that the separation of powers limits the *means* by which the judicial branch can perform such regulation. According to the Court, the judicial branch may act through

[11] This statute prohibiting frivolous pleadings and claims expressly applies to "any party who is a claimant or defendant, *including but not limited to . . . the State of Texas*." TEX. CIV. PRAC. & REM. CODE § 9.002(b)(10) (emphasis added).

[12] The Court's opinion contains other broad statements that could appear to be inconsistent with this acknowledgement. The Court asserts, for example, that the attorney general's "judgment and discretion . . . *will not* be controlled by other authorities,'" *ante* at 35 (citing *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924)), that "the attorney general's assessments in bringing suit are privileged at a *constitutional* level from collateral review by the other branches," *id.* at 27, and that the attorney general's "authority both to file petitions in court and to assess the propriety of the representations forming the basis of the petitions that he files . . . cannot be controlled by the other branches of government," *id.* at 3. Yet the Court ultimately acknowledges, as it must, that the "professional disciplinary (and other) rules . . . apply to all Texas lawyers, including the attorney general and his staff," *id.* at 2, that the "judicial branch has the authority to demand compliance with the rules of professional discipline attorneys[,] . . . including those from the executive branch," *id.* at 27–28, and that the judicial branch has authority to "hold[] even the attorney general (and any other executive-branch lawyer) to account for litigation conduct," *id.* at 27. In short, the Court agrees that—consistent with the separation of powers—the judicial branch *can* control the attorney general's judgment and discretion in the filing of pleadings.

its *courts* to engage in "*[d]irect* scrutiny within the judicial process" without violating the separation of powers, *id.* at 28,[13] but may not act through its *commission* to address misconduct by "collaterally" reviewing pleadings filed by the attorney general or his assistants, *id.* at 37.[14] Although the Court asserts that it merely "reaffirm[s] this core

[13] *See id.* at 30 ("Instead, if the contents of the pleadings are objectionable, whether for legal or ethical reasons, only *direct* scrutiny—that is, by the court to whom the pleadings are presented—is permissible under the separation-of-powers doctrine."), 27 (explaining that because the attorney general "can only act within the limits of the Texas Constitution and statutes," when he brings suit, "the authority of the court hearing the case naturally includes holding even the attorney general (and any other executive-branch lawyer) to account for litigation conduct" (quoting *Del Rio*, 67 S.W.3d at 92)).

[14] *See id.* at 27 ("[T]he attorney general's assessments in bringing suit are privileged at a *constitutional* level from *collateral* review by the other branches." (second emphasis added)), 34 ("[T]he *commission's* allegations are at odds with our case law regarding *who* is constitutionally entitled to assess the facts and the law that warrant bringing suit on behalf of the State." (first emphasis added)0, 34 ("[T]he attorney general's determinations about whether a lawsuit and its constituent parts are 'supported by any charge, indictment, judicial finding, and/or credible or admissible evidence' are entrusted to the attorney general—not *the commission*." (emphasis added)), 36 ("[B]y targeting the first assistant (or any other executive branch attorney exercising the attorney general's core constitutional powers), *the commission* threatens the attorney general's ability to run his office and therefore represent the State in civil litigation altogether." (emphasis added)).

Actually, the Court allows an exception to this rule, suggesting that the separation of powers does not prevent the judicial branch from "collaterally" regulating the practice of an executive-branch attorney if the attorney's alleged misconduct "was made in the [attorney's] private (and thus unprotected) capacity, or [if] it constituted criminal (and thus unauthorized and unprotected) conduct, or [if] it was *ultra vires* (and thus was not action on behalf of the State at all)." *Id.* at 36. But the Court fails to acknowledge or address the fact that conduct that violates a judicially enacted disciplinary rule is just as "unauthorized" as conduct that violates a legislatively enacted criminal statute or exceeds the attorney general's legal authority.

7

constitutional principle," *id.* at 30, it cites no authority—from this Court or any other—that has recognized the direct/collateral distinction it describes today. That, of course, is because it can't.[15]  Until today, no court has ever held that the separation of powers prohibits the judicial branch from regulating the practice of law by one lawful means when it permits the branch to have the same effect by another.

The Court asserts several justifications for its imaginative invention of this new direct/collateral distinction, but none withstands a *separation-of-powers* analysis. The Court says, for example, that the separation of powers does not prohibit "direct scrutiny" because direct

---

[15] The Court struggles to find support for its proposition in *In re Texas House of Representatives*, 702 S.W.3d 330 (Tex. 2024), but its effort is futile. As the Court explains, we held in that case that the separation-of-powers doctrine prohibits the legislative branch from exercising its investigatory power "when a legislative subpoena would have the effect of blocking a lawfully scheduled execution." *Ante* at 12 (citing *Tex. House*, 702 S.W.3d at 346–47). We held that the separation of powers prohibits the legislative branch from exercising its investigatory power in that circumstance because of the "*effect*" that exercise would have on the other branches' powers, not because of the *means* by which the legislative branch sought to exercise its power *See Tex. House*, 702 S.W.3d at 334 (holding separation of powers prohibits legislative branch from exercising its investigatory power in "the face of a scheduled execution" when doing so would "override the scheduled legal process leading to an execution"). Under *Texas House*, the Legislature cannot exercise its investigatory power by *any* means if doing so "would thwart the considered and long-planned work of the other two branches." *Id.* at 340. Here, the Court agrees that the judicial branch may exercise its power to regulate the practice of law when the effect of doing so prevents the executive branch from deciding whether to file a suit or what to assert in its pleadings. *Ante* at 30. But the Court holds that the separation of powers permits the judicial branch to exercise that power only through one lawful means ("direct" scrutiny by courts), and not through another lawful means ("collateral" scrutiny through an agency to which the branch has delegated that power), even though the effect is the same in both cases. *Id.* Neither *Texas House* nor any other precedent supports that holding.

scrutiny "accommodates the inherent authority and responsibility of the judicial branch." *Ante* at 28. But so does "collateral" enforcement of the disciplinary rules through disciplinary proceedings.[16] Both are equally

---

[16] The judicial branch exercises its inherent authority and responsibility to regulate the practice of law in two different ways, both of which are equally valid exercises of its inherent administrative powers. One way it does this is through what the Court refers to today as "direct scrutiny" of an attorney's conduct. *Id.* at 2. "Trial courts are empowered to command respect and decorum in courtroom proceedings and may exercise that authority by sanctioning members of the bar who are pugnacious and indecorous." *Brewer*, 601 S.W.3d at 729. The judicial branch may exercise this inherent power to sanction an attorney's bad-faith conduct "even when the offensive conduct is not explicitly prohibited by statute, rule, or other authority." *Id.* at 718 (citing *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997)).

Statutes, rules, and other authorities represent a second way courts regulate the practice of law. *See id.* at 723. *This Court* has promulgated both the Texas Disciplinary Rules of Professional Conduct to establish conduct standards applicable to all Texas attorneys *and* the Texas Rules of Disciplinary Procedure to govern the process for addressing alleged violations of those standards through disciplinary proceedings. To "aid" the Court in this function, the Legislature statutorily created the State Bar of Texas, the commission, and other agencies and positions that exist *within the judicial branch* to assist the courts in exercising their inherent power to discipline attorneys who violate rules governing attorney conduct. The State Bar Act provides "a statutory mechanism for promulgating regulations governing the practice of law." *Gomez*, 891 S.W.2d at 245; *see* TEX. GOV'T CODE § 81.011(c). But as the Court confirms today, the Act "is not the source—much less the sum—of judicial authority to regulate the practice of law." *Ante* at 23. By its own terms, the Act operates merely "*in aid* of the judicial department's powers *under the constitution* to regulate the practice of law, and not to the exclusion of those powers." TEX. GOV'T CODE § 81.011(b) (emphases added). The State Bar Act, in other words, merely assists the Court as it exercises its *inherent constitutional powers. See Unauthorized Practice of L. Comm. v. Am. Home Assurance Co.*, 261 S.W.3d 24, 33 (Tex. 2008) ("The Legislature has acknowledged that the Court has exclusive authority to adopt rules governing admission to the practice of law in Texas."); *Nolo Press*, 991 S.W.2d at 770 ("The Court's inherent power under Article II, Section I to regulate Texas law practice is assisted by statute, primarily the State Bar Act."). Acting "on behalf of the judicial department," this Court exercises "administrative control over the

proper exercises of the judicial branch's "inherent authority and responsibility" to regulate the practice of law. *See Nolo Press*, 991 S.W.2d at 769; *Gomez*, 891 S.W.2d at 245.

Similarly, the Court asserts that "direct scrutiny" is permissible because "[l]awyers who submit to a court's jurisdiction subject themselves to that court's authority" to require their adherence to rules of professional conduct. *Ante* at 2. But attorneys who never set foot in a courtroom also subject themselves to the judicial branch's authority to ensure they comply with the disciplinary rules. The judicial branch's administrative power to regulate the practice of law exists for "both conduct before the court and that beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "The distinction between in-court and out-of-court contempts has been drawn not to define when a court has or has not the authority to initiate prosecution for contempt, but for the purpose of prescribing what procedures must attend the exercise of that authority." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987). The judicial branch has inherent authority to regulate the practice of *every* licensed attorney, not just of litigators who appear in the courts. TEX. GOV'T CODE § 81.071 ("*Each attorney* admitted to practice in this state . . . is subject to the disciplinary . . . jurisdiction of the supreme court and the Commission for Lawyer Discipline, a committee of the state bar." (emphasis added)); *Brewer*, 601 S.W.3d at 723 n.76 (addressing the "processes, procedures, and standards of review applicable to *all attorneys*" (emphasis added)).

---

state bar," which exists only as "an administrative agency of the judicial department of government." TEX. GOV'T CODE § 81.011(a), (c).

Still, the Court insists, the judicial branch's "direct scrutiny" of an executive-branch attorney's conduct differs from "collateral" review through the disciplinary process because collaterally "targeting" the attorney general's pleadings poses a "great risk of usurping" executive-branch authority. *Ante* at 36. But the Court fails to explain how "collateral" review creates that risk any more than "direct" review. Indeed, a court's "direct" action addressing the attorney general's conduct "usurps" the very same powers to the same extent; it just interferes and usurps "directly" instead of "collaterally." If the United States Supreme Court had decided to sanction Webster for filing the pleading at issue here (as the Court concedes it could have done without violating the separation of powers), its actions would have interfered with Webster's attempt to discharge his duties at least as significantly as this "collateral" disciplinary proceeding. And the friction that occurs when the commission reviews an attorney's conduct is, of course, not "unauthorized;" it is authorized by the Legislature *and by this Court*, in the exercise of the inherent powers the Court concedes belongs to the judicial branch.

According to the Court, though, the separation of powers prohibits "collateral" scrutiny of the attorney general's initial pleadings unless a court refers the matter to the commission after the court's "direct observation of a disciplinary-rule violation." *Id.* at 48. Of course, courts that directly observe an attorney's misconduct "can, and indeed must, refer the matter [to the commission] for disciplinary proceedings." *Brewer*, 601 S.W.3d at 723 n.76. But the Court cannot even suggest that the commission exercises the judicial branch's inherent power to

11

regulate the practice of law *only* when it responds to a court's referral.[17] The commission and the "collateral" disciplinary process through which it investigates attorney misconduct exist only within the judicial branch and only "[i]n furtherance of [this Court's] powers to supervise the conduct of attorneys." TEX. GOV'T CODE § 81.072(a). Whether it acts in response to a referral by a court or to a complaint by someone else, the commission exercises the judicial branch's inherent power to regulate the practice of law.

Regrettably, the Court's opinion seems to reflect a level of disdain or distrust for the commission, or at least for the disciplinary rules and processes that govern the commission's role. The Court "doubt[s]," for example, that the commission should ever be able to use Rule 8.04(a)(3) "to scrutinize the contents of initial pleadings of any attorney," *ante* at 2, and it is particularly troubled that the commission can initiate such scrutiny based on a complaint filed by someone who "does not reside in Texas," is not an active Texas attorney, and "has no connection to the underlying litigation," *id.* at 4–5. Yet as the Court concedes, the commission in this case followed the very process "prescribed by the Texas Rules of Disciplinary Procedure," *id.* at 5, which *this Court* adopted. If we are dissatisfied with the process we ourselves created, we

---

[17] The Court acknowledges this reality but declines to consider it because "no referral to the commission occurred in this case." *Ante* at 47. Instead, it notes "only that a referral to the commission that is preceded by a court's direct observation of a disciplinary-rule violation would be an exercise of the court's inherent powers 'to aid in the exercise of its jurisdiction, in the administration of justice, and in preservation of its independence and integrity.'" *Id.* at 47 (quoting *Cofer*, 754 S.W.2d at 124). But, of course, the commission's review of alleged misconduct based on a complaint rather than a referral is *also* a valid exercise of those same judicial-branch powers.

should change it, not declare portions constitutionally inapplicable, case-by-case, based on principles we make up as we go along.[18]

And we certainly shouldn't declare portions inapplicable based on a fundamental yet clearly inapplicable constitutional doctrine like the separation of powers. No doubt the commission does not possess all the powers of this Court, or of any court. It possesses no jurisdictional power[19] at all, and only such administrative powers as this Court has delegated to it. But the powers it does possess are, as the Court concedes,

---

[18] This Court can revise the disciplinary rules when needed—and we have. Just last year, we approved an amendment to Disciplinary Rule 1.06 to address the precise concern that so bothers the Court today. *See* Order of the Supreme Court of Texas, Misc. Docket No. 23-9100 (Tex. Dec. 18, 2023); TEX. RULES DISCIPLINARY P. R. 1.06, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A-1. As a result of this amendment, a grievance against a Texas attorney can qualify as an actionable complaint only if the grievance is submitted by a "person who has a cognizable individual interest in or connection to the legal matter or facts alleged." TEX. RULES DISCIPLINARY P. R. 1.06(G)(2)(f).

[19] The judicial branch's "jurisdictional power" is the power to resolve individual cases and controversies by hearing and deciding them through the issuance of legally binding judgments. *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 865 S.W.2d 941, 942 (Tex. 1993) (per curiam) (quoting *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985)); *see also Jones v. Hendrix*, 599 U.S. 465, 487 (2023) ("[T]he authority to determine the facts and the law in an individual case, and to render a final, binding judgment based on those determinations, stands at the core of the judicial power."); *Tex. House*, 702 S.W.3d at 342 (describing "the distinctly judicial duties of rendering judgment, imposing sentence, and adjudicating any appellate or collateral challenges that may be raised" in a particular lawsuit); *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 635 (Tex. 1996) ("[T]he power to determine controverted rights to property by means of binding judgment" is "vested in the judicial branch." (citing *Bd. of Water Eng'rs v. McKnight*, 229 S.W. 301, 304 (Tex. 1921))). "Jurisdictional power" is "separate and distinct from" the judicial branch's "administrative powers." *Eichelberger*, 582 S.W.2d at 400. "The Court's inherent powers, such as the power to regulate the practice of law, are not *jurisdictional* powers." *Gomez*, 891 S.W.2d at 245.

13

constitutional powers *this Court* has delegated to it, as a delegee of "this Court's inherent powers" to regulate the practice of law. *Id.* at 23. As the Court concedes, "the commission's work necessarily implicates derivative judicial power." *Id.* at 14. The commission's power, though limited, is the power of the judicial branch no less than Webster's power is the power of the executive branch. If the Court is dissatisfied with the commission's operations, it can of course alter its delegation by appointing different members or revising our disciplinary-procedure rules. But for purposes of determining the separation-of-powers doctrine's effect on the commission's role, the commission's power is as much the power of the judicial branch as is our own.[20]

Fortunately, despite the Court's many broad statements about the separation of powers, the Court's powers, the commission's powers, and the attorney-discipline process, its actual holding in this case is very

---

[20] The Court also suggests its holding is justified because allowing "collateral" scrutiny of an executive-branch attorney's professional conduct would "risk the politicization and thus the independence of the judiciary." *Ante* at 3. I, too, am concerned about this risk, perhaps even more so today. But "politicization" risks are not any more salient when the judicial branch disciplines an executive-branch attorney than when the judicial branch decides cases involving the executive branch—as it does regularly. And even if they were, the risk of politically motivated scrutiny is no greater when the commission "collaterally" regulates an attorney's practice than when a court does so "directly." And we should at least be willing to admit that the risk that the commission or a court will improperly act politically by pursuing discipline against an executive-branch attorney is no greater than the risk that the commission or a court will act politically by declining to pursue such discipline (or, for that matter, by holding that the separation of powers prevents the judicial branch from doing so). If fear of appearing to be acting politically were sufficient to prevent the judicial branch from exercising its constitutional powers, we shouldn't be deciding this case at all. The judicial branch should never allow the fear of appearing to be acting politically to serve as an excuse for not fulfilling its constitutional duty to regulate the practice of law.

narrow: Under "the narrow circumstance before us," in which the First Assistant Attorney General filed an original action in the United States Supreme Court, the "separation of powers requires that violations of the sort alleged here—based wholly on representations in initial pleadings—must be addressed directly by the court to whom the pleadings are presented, rather than on the commission's purely collateral review." *Id.* at 43. By narrowing its holding in this manner, the Court at least reduces the damage it causes today to the attorney-discipline process on which this Court relies to aid its exercise of the judicial branch's inherent power to regulate the practice of law. Unfortunately, it does not reduce the damage it causes to the separation-of-powers doctrine.

I respectfully dissent.[21]

---

[21] Two final points seem worth mentioning. First, the Court devotes significant discussion to the "merits" of the complaint filed against Webster and of the commission's construction of the disciplinary rules. *See ante* at 32–39. The Court asserts that its consideration of the merits is appropriate because the "facts underlying the merits" and the "facts underlying our jurisdiction" are "intertwined." *Id.* at 32. Even assuming our process for resolving a jurisdictional challenge based on the separation of powers should be similar to our process for resolving a jurisdictional challenge based on sovereign immunity (an assumption the Court makes but does not support), a finding that Webster did not violate the disciplinary rules says nothing about whether the separation of powers prevents the commission from exercising its delegated judicial-branch authority to investigate a complaint and impose discipline if he did. My inability to join the Court's judgment has nothing at all to do with the merits of the complaint against Webster. As I stated above, in my view, the commission's proceeding against Webster could easily fail for many different reasons—merits included—but the separation of powers is not one of them.

Second, speaking of sovereign immunity, Webster argues that sovereign immunity bars the commission's proceeding against him even if the separation-of-powers doctrine does not. The court of appeals rejected this argument. 676

15

_____

Jeffrey Boyd
Justice

**OPINION FILED:** December 31, 2024

S.W.3d 687, 702 (Tex. App.—El Paso 2023). Because the Court concludes the separation of powers bars the proceeding, it does not reach the issue. I conclude that sovereign immunity does not bar the proceeding for the reasons the court of appeals aptly explained. In any event, I dissent at least because the Court does not reach the issue.