# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00270-CV

**Robert O'Neal, D.C., Appellant**

**v.**

**Texas Board of Chiropractic Examiners, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN300020, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this appeal, we consider whether the trial court properly granted a plea to the jurisdiction dismissing a declaratory judgment action seeking a construction of a statute with which the defendant agency agrees. We affirm the judgment of the district court.

### BACKGROUND

Appellant, Robert O'Neal (O'Neal), is a chiropractor licensed and regulated by appellee, the Texas Board of Chiropractic Examiners (Board). *See* Tex. Occ. Code Ann. §§ 201.301, *et seq*. (West 2004). As part of his practice, O'Neal employs needle electromyography ("needle EMG"), a diagnostic technique that is used to study nerve conduction in patients. Needle EMG

entails the insertion of a needle into a patient's muscle as a means of observing and recording electrical activity.[1]

The scope of practice for a "chiropractor" is statutorily defined, in relevant part, as the performance of "nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system." Tex. Occ. Code. Ann. § 201.002 (Vernon 2003). The Board has issued statements in 1997, 1998, 1999, and 2002 concluding that needle EMG is within the scope of chiropractic practice. Tex. Bd. Chiropractic Exam'rs, *Acupuncture, MUA and Needle EMG*, (ratified September 11, 1997, amended May 7, 1998 and May 1999), and Tex. Bd. Chiropractic Exam'rs, *Re: Scope of Practice Clarification regarding Nerve Conduction Studies*, (January 25, 2002) (memo to all Texas chiropractic licensees).[2]

In a 1998 opinion, however, the Attorney General issued an opinion concluding that the use of a needle for any purpose, other than drawing blood for diagnostic purposes or for acupuncture, is outside the scope of practice of Texas chiropractors. *See* Op. Tex. Att'y Gen. DM-

---

[1] An electromyogram or EMG is a record of the intrinsic electric activity in a skeletal muscle. In needle EMG, data regarding such activity are obtained by inserting a needle electrode into the muscle and observing electrical activity through an oscilloscope and a loud speaker. *See* Op. Tex. Att'y Gen. DM-427, at 7 n.6 (1998) (citing Mosby's Medical, Nursing & Allied Health Dictionary 534 (4th ed. 1994)).

[2] The original 1997 opinion and the 1998 and 1999 amendments to the 1997 opinion were based on the uncodified version of the chiropractic practice definition found in Tex. Rev. Civ. Stat. Ann. art. 4512b. The 2002 opinion was based on the codified version. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1528 (Tex. Occ. Code Ann. §§ 201.301, *et seq.* (West 2004)). Neither party has suggested that the codification had any impact on the issues before us.

2

427 (1998). Whether the Board or the Attorney General is correct regarding needle EMG and the scope of chiropractic practice has not yet been definitively resolved in the courts. The issue has been presented in one prior appeal to this court brought by a workers' compensation carrier who sued the Board following the Board's 1997 opinion concluding that needle EMG was within the scope of chiropractic practice. *Continental Casualty Co. v. Texas Bd. of Chiropractic Exam'rs*, No. 03-00-00513-CV, 2001 WL 359632 (Tex. App.—Austin Apr. 12, 2001, no pet.) (not designated for publication). The carrier claimed that, under the Workers Compensation Act, it would be required, due to the Board's opinion, to reimburse chiropractors for medical care the chiropractors could not legally provide. We affirmed the trial court's granting of a plea to the jurisdiction, concluding that the carrier was requesting an impermissible advisory opinion where the carrier was not a licensee of the Board and alleged no consequences that the Board could impose against it. *Id*. at *7. We observed that the carrier's complaint "appears to be against the Workers' Compensation Commission, which is not a party to the litigation," and added that because needle EMG was not alleged to be illegal, the carrier would indisputably be required to pay some category of medical professional for such services. *Id*. at ** 7-8. We thus did not reach the issue of whether needle EMG is properly within the scope of chiropractic practice.

In a prior proceeding brought by O'Neal seeking reimbursement for needle EMG services he had provided patients, the Texas Workers' Compensation Commission agreed with the Attorney General that such services are outside the scope of chiropractic practice and not reimbursable. *The Texas Fund d/b/a Tex. Worker's Comp. Ins. Fund v. Heath & Medical Practice Assoc. and Texas Worker's Comp. Comm'n*, SOAH docket No. 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-M4 (July 18, 2001).

3

But O'Neal failed to timely perfect his appeal to the Travis County district court, and his case was dismissed for want of jurisdiction. O'Neal filed the present proceedings in January 2003.

Here, O'Neal has sued the Board purporting to seek a declaration that needle EMG is within the scope of chiropractic practice, a position that the Board has steadfastly maintained since 1997. The district court, concluding that no justiciable controversy existed between O'Neal and the Board, granted the Board's plea to the jurisdiction. This appeal ensued.

## DISCUSSION

O'Neal brings three issues on appeal: (1) his pleadings demonstrated the existence of a justiciable controversy regarding whether the statutorily defined scope of chiropractic practice, if interpreted in accord with the Attorney General's view, violates his due process and equal protection rights, thereby invoking his "inherent, constitutional right to judicial review;" (2) the trial court had subject matter jurisdiction under section 2001.038 of the Administrative Procedures Act, Tex. Gov't Code Ann. § 2001.038 (West 2000), which authorizes declaratory judgment actions to challenge an agency "rule"; and (3) the trial court was required to first rule on special exceptions the Board had filed, and then permit O'Neal leave to amend his pleadings, before granting the plea to the jurisdiction. The Board responds that O'Neal failed to allege facts demonstrating a justiciable controversy or any threatened or actual impairment of his rights by the Board. This absence of subject matter jurisdiction, the Board adds, was incurable. Thus, the Board urges, the trial court was not required to allow O'Neal the opportunity to amend and that, in any event, O'Neal had that opportunity but waived it.

4

**Standard of review**

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* Because the district court did not specify the grounds under which it dismissed O'Neal's action, we may affirm on any of the grounds asserted. *Britton v. Texas Dept. of Criminal Justice*, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

**Existence of a justiciable controversy**

We agree with the Board that O'Neal has failed to allege facts giving rise to a justiciable controversy. Nothing in either section 2001.038 nor any "inherent, constitutional right to judicial review" can confer subject matter on the trial court where the defendant Board indisputably agrees with the legal interpretation regarding the scope of chiropractic practice that O'Neal seeks.

"To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779-80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.); *Chapman v. Marathon Mfg. Co.*, 590 S.W.2d 549, 552 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). Moreover, "for a controversy to be justiciable, there must be a real controversy between

5

the parties that will be actually resolved by the judicial relief sought." *The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994).[3]  A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

O'Neal's only controversy or dispute alleged in his pleadings concerns the legal opinions of the Attorney General or other agencies—not those of the Board.  He fails to allege anything more than speculation that the Board might someday change its interpretation of the scope of chiropractic practice.  Such allegations are too remote to confer subject matter jurisdiction on the trial court.  For the same reason, even if O'Neal could bring an action challenging Op. Tex. Att'y Gen. DM-427 or that the opinion is a "rule," the Board would not be the proper defendant.[4]

---

[3]  The doctrine has a pragmatic, prudential aspect that is directed toward "[conserving] judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).  Moreover, avoiding premature litigation prevents courts from entangling themselves in abstract disagreements while allowing them to postpone interfering when necessary so that other branches of government and governmental agencies may perform their functions unimpeded.  *Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998).

[4]  We also note that the attorney general opinions are advisory and are issued pursuant to constitutional and statutory authority.  *See* Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. §§ 402.041-.045 (West 1998); *see also Kneeland v. Nat'l Collegiate Athletic Ass'n*, 850 F.2d 224, 227-28 (5th Cir. 1988).  Attorney General opinions are not rules:  "The attorney general's opinions . . . are purely ministerial and advisory." *City of San Antonio v. Texas Att'y Gen.*, 851 S.W.2d 946, 950 (Tex. App.—Austin 1993, writ denied) (citing James G. Dickson, Jr., *Vital Crucible of the Law: Politics and Procedures of the Advisory Opinion Function of the Texas Attorney General*, 9 Hous. L. Rev. 495, 517-523 (1972)); *Veterans of Foreign Wars v. Abbott*, No. 03-02-00447-CV, 2003 WL 21705376, at * 11 (Tex. App.—Austin July 24, 2003); *see also* Anthony C. Grigsby, *Rulemaking: Before Filing a Challenge*, *in Administrative Law in Texas*, University of Texas Continuing Legal Education July 29, 2004 ("Statements are not rules if they are intended to provide guidance and direction, not prescriptive interpretations of statutes, especially if the agency does not follow the APA procedures when adopting the statements.").

Because we find that there is no justiciable controversy between the O'Neal and the Board, the trial court lacked subject matter jurisdiction over the case.

**Leave to amend**

O'Neal contends that the district court erred when it did not allow him to amend his pleadings after the Board alleged that his pleadings contained a jurisdictional defect. We acknowledge that if pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate *incurable* defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d 217, 226. However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* In this case, we see no manner in which O'Neal could have amended his pleadings to have demonstrated that the trial court had jurisdiction over his case.

We note, however, that even if it were possible for O'Neal to cure the jurisdictional defects by amending his pleadings, he waived his right to do so when he did not request to amend the pleadings in response to the Board's plea to the jurisdiction. *See Kassen v. Hatley*, 887 S.W.2d 4, 13-14 n.10 (Tex. 1994). The Board filed its plea to the jurisdiction, special exceptions, and

---

Moreover, our court has concluded that attorney general opinions are not the proper subject matter for an action for declaratory judgment: "In summary, how the Attorney General makes his legal determinations and runs his office are not subject to declaratory and injunctive relief." *Veterans of Foreign Wars*, 2003 WL 21705376, at *13.

7

original answer on January 24, 2003. The district court held a hearing on the Board's plea to the jurisdiction three months later. Around the time of the hearing, O'Neal filed an opposition to the Board's plea, but O'Neal did not request an opportunity to replead nor did he plead any additional jurisdictional facts that would show a live controversy between the Board and O'Neal. O'Neal had ample notice of the Board's arguments, but he did not attempt to replead.[5] We overrule O'Neal's issue.

---

[5] O'Neal argues that the district court could not properly grant the Board's plea to the jurisdiction without having decided the Board's special exceptions. To support his contention, O'Neal points to *Texas Dept. of Corr. v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974). However, in *Herring*, the state had filed only a summary judgment; it had not filed special exceptions or a plea to the jurisdiction, "The Department of Corrections leveled no special exceptions to Herring's pleadings and thus no opportunity to amend his pleadings to state a cause of action was afforded." *Id.* Instead, we look to *Harris Co. v. Sykes*, No. 02-1014, 2004 WL 1194127, at *3 (Tex. 2004):

> A trial court must grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when the pleadings do not state a cause of action upon which the trial court has jurisdiction. This was such a case. After Harris County filed its plea to the jurisdiction, Sykes amended her petition to state with greater particularity [her] theory.     ***

> If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action.

*Id.* Although, in this case, O'Neal did not choose to amend his pleadings, he was afforded a three-month window of opportunity to do so.

8

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   September 10, 2004