ACCEPTED
01-11-00333-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/3/2015 11:16:28 PM
CHRISTOPHER PRINE
CLERK

**Case No. 01-11-00333-CV**

_____

**In the Court of Appeals for the**
**First Supreme Judicial District**
**at Houston, Texas**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

11/3/2015 11:16:28 PM

CHRISTOPHER A. PRINE
Clerk

_____

**Andrew Whallon, Dalia Garcia, and Richard Grayshaw,**
**Appellants**
**vs.**
**City of Houston,**
**Appellee**

_____

**On Appeal from the 270th Judicial District Court**
**of Harris County, Texas**
**Trial Court Cause Number 2008-51588**

_____

**Appellant Andrew Whallon's Motion for En Banc Reconsideration of this**
**Court's Opinion and Judgment of February 5, 2015**

_____

**TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:**

COMES NOW, APPELLANT Andrew Whallon, in the above styled and numbered appeal and files this, his Motion for En Banc Reconsideration of this Court's Opinion and Judgment of February 5, 2015, relative to this Court's affirmance of the underlying Judgment against him. Pursuant to Rule 49 of the Texas Rules of Appellate Procedure, Appellant Whallon would respectfully show the Court as follows:

On February 5, 2015, this Court affirmed the underlying trial court's

Corrected Final Judgment against Appellant Whallon, where the City of Houston brought suit in District Court for demolition costs and attorneys fees, after having first sought ***and received*** administrative remedies related to the same matters under the Local Government Code §54.017 and Chapter 10 of the Houston Municipal Code.

By this Motion, Appellant Whallon respectfully asks this Court to revisit its decision as to Appellant Whallon, and more specifically, as to the Trial Court's jurisdiction to hear the underlying matter. Appellant Whallon believes that en banc reconsideration is appropriate because it appears that the Court panel misinterpreted Appellant's arguments as to the trial court's jurisdiction to hear the underlying case. Appellant believes that, had the panel focused its analysis on the existence of subject matter jurisdiction, (a threshold matter that the Court "admittedly had the affirmative obligation to ascertain ... regardless of whether the parties questioned it"[1]) rather than on Appellant's *res judicata* argument, the Opinion would have read differently.

Additionally, the primary issue concerning the trial court's jurisdiction following an earlier administrative proceeding resulting in final and binding Orders (which were not appealed to the district court), is a developing area of the law. In fact, the Texas Supreme Court has issued two opinions (in 2011 and 2012) which

---

[1] Opinion at pg. 9 citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010).

deal with the issue of jurisdiction in this type of case differently. See *City of Dallas v. Stewart,* 361 S.W.3d 562 (Tex. 2012), and *City of Beaumont v. Como*, 381 S.W.3d 538 (Tex. 2012). For these reasons, Appellant urges the entire court to consider the following facts and arguments.[2]

## UNDERLYING FACTS

On Nov 7, 2007, the Building Standards Commission issued eight (8) Orders requiring that the Owners/lien holders of the Candlelight Trails Condominium complex secure the complex to City specifications within 60 days. It also provided that if the Complex was not secured within that period, the COH had the authority to secure, repair or demolish the Complex as the COH saw fit. (FOF 9) (RR Vol. 6 at 170-323 - Defendant's Trial Exs. 1, 2 & 3) The COH was also granted a privileged lien against the owners/lien holders' property. (RR Vol. 5 at 53-121 - Plaintiff's Trial Ex. 6-13) Any appeal of the Commissions Orders had to be filed within 30 days. The Commission's orders were not appealed. Instead, on August 27, 2008, long after the Commission's Orders became "final and binding," the COH filed the underlying lawsuit in District Court (APP L) seeking essentially the same relief as it had received from the Building Standards Commission (e.g., demolition, a privileged lien for demolition costs and administrative costs (App H - Sec. 10-373).

---

[2] Appellant also incorporates his prior arguments, briefing and Appendices, as if set forth in their entirety.

After a trial to the Bench, the District Court found for the Plaintiff (COH) and Defendants Whallon, Garcia and Grayshaw appealed, arguing (among other things) that the District Court lacked jurisdiction to hear the underlying matter, once the issues had been tried through the administrative proceedings before the Building Standards Commission. Appellants improperly cited the doctrine of *res judicata* in their argument.

Ultimately, this Court reversed and rendered Judgment as to Appellants Garcia and Grayshaw, but affirmed the Trial Court's Corrected Final Judgment as to Appellant Whallon.

## ARGUMENT

### The Res Judicata Analysis

Initially, this Court began examination of Appellant's argument, that the underlying trial court lacked jurisdiction to hear the case before it, by comparing and contrasting subject-matter jurisdiction with res judicata, based upon Appellant's earlier argument of res judicata.

The Court began with the premise that subject matter jurisdiction is "essential to a court's power to decide a case," citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000), and continued stating that "[A] court acting without such power commits fundamental error that we may review for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440,

4

443–44 (Tex. 1993).

The Court pointed out that "as a threshold matter, Appellant improperly conflate[d] the concept of res judicata and subject-matter jurisdiction"; however, even if true, the Court admittedly had the affirmative obligation "to ascertain that subject matter jurisdiction exists, regardless of whether the parties questioned it." Opinion at pg. 9 citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010).

Although the Court admitted its responsibility in this regard, in its Opinion, the Court failed to meet that responsibility, and instead, limited its analysis to "res judicata" and Appellant's misapplication of that concept to the case at hand. In its Opinion, the Court stated that

> "Appellants' res judicata arguments rest entirely on the erroneous premise that the City could have sought and obtained an award of demolition costs and most of its attorneys' fees in a proceeding before the commission. But appellants do not cite authority for that proposition, and our own research has not found support for it in the Texas Local Government Code, in the relevant ordinances, or in the case law."

Opinion pg. 16.

The Court went on to say that

> "Both the Texas Local Government Code and the Houston City Ordinance authorize the commission to order repairs, order that property be vacated, and order that property be demolished. They also both authorize liens against the real property and civil penalties in commission proceedings, but neither authorizes an award of demolition costs or attorneys' fees. Accordingly, appellants cannot demonstrate, through reference to statutory authority, that recovery of

demolition costs and attorneys' fees was relief that the City could have, but did not, seek before the commission for purposes of res judicata."

Opinion pg. 17.

The Court made these determinations despite Appellant Whallon's argument in his Brief under Issue 1, beginning in the last paragraph of pg. 22 and concluding on pg. 23, where Whallon directs the Court to "See Houston Municipal Code, Article IX, Division 4, Sec. 10-373 (2007); (APP H)."

Division 4 of the Houston Municipal Code of Ordinances regarding "Dangerous Buildings" and Division 5, "Building and Standards Commission" establish a statutory scheme which include very specific provisions for abating the nuisance of dilapidated buildings and construction as well as implementation of Local Government Code Chapter 54, Sec. C, establishing Houston's Building and Standards Commission, (Houston Municipal Code of Ordinances, Sec. 10-391 et seq). The Court of Appeals Opinion highlights only one or two of those provisions while omitting the rest.

In fact, the Orders issued by the Building Standards Commission, themselves, stated on their face that:

> UPON THE EARLIEST DATE OF ANY FAILURE BY THE OWNERS OR LIENHOLDERS TO TIMELY COMPLY WITH THIS ORDER, THE CITY OF HOUSTON SHALL BE AUTHORIZED TO REMEDY, ALLEVIATE, OR REMOVE ANY SUBSTANDARD OR DANGEROUS BUILDING IN ACCORDANCE WITH SECTIONS **10-351** AND **10-370** OF THE CITY'S CODE OF ORDINANCES. PURSUANT TO SECTIONS 10-

351 AND **10-395** OF THE CITY'S CODE OF ORDINANCES, A PRIVILEGED LIEN, INFERIOR ONLY TO TAX LIENS AND LIENS FOR STREET IMPROVEMENTS, MAY BE PLACED UPON THE LAND DESCRIBED HEREIN, PLUS TEN PERCENT (10%) INTEREST PER ANNUM UNTIL PAID. (Emphasis added)

**Sec. 10-351** of the City's Code of Ordinances specifically authorized the City to perform any and all work as may be required to bring the property into compliance with the applicable order, and the city's expenses related to such work to constitute a lien against the property.

**Sec. 10-370** of the City's Code of Ordinances specifically authorized the neighborhood protection official to cause the building to be vacated, repaired, secured, and/or demolished pursuant to the order, should the persons having an interest in the property fail to comply with the order of the hearing official within the time specified in the order for compliance.

**Sec. 10-395** of the City's Code of Ordinances specifically provides that, if the city causes any dangerous building or vector conditions to be abated with its own employees or through contractors, the cost of the work and the administrative expenses incurred for the work performed under this division shall constitute a lien on the property.

Appellant points out the above ordinances as references cited within the Commission's Orders; however, Appellant would also refer the Court to additional ordinances which were available to the City in the underlying administrative

7

proceeding: specifically, **Secs. 10-371 through 10-373**.

**Sec. 10-371** provides that the hearing official's file will remain open for three years from the date of the Commission's Order and if the neighborhood protection official receives evidence that the building has not remained secured ... the hearing official shall reconvene the hearing. If the hearing official finds that the building remains a dangerous building, the hearing official may issue a revised order that the building be demolished.

**Sec. 10-372** provides that the Orders of the hearing official are final and binding, absent an appeal.

**Sec. 10-373** provides that the administrative expenses incurred by the City **for** inspecting buildings, locating owners, conducting hearings, issuing notices and orders, together with all associated administrative functions, as well as the costs of securing, demolishing or performing other work in connection with an order either by the city or by persons doing so under contract with the city, shall be separately calculated and assessed in each instance in which the city takes the described action pursuant to this division, and this amount shall constitute a priority lien on the property.

Finally, **Sec. 54.036** of the Local Government Code authorizes the Building Standards Commission to (5) determine the amount and duration of the civil penalty that the municipality may recover as provided by **Sec. 54.017** (which

allows the City to recover civil penalties against property owners who commit acts in violation of the ordinance or failed to take action necessary for compliance with the ordinance relating to dangerously damaged or deteriorated structures).

In this case, the Orders rendered by the Building Standards Commission after the 11/7/07 hearing, gave the City all of the relief requested by the City: the property was vacated, ordered secured and/or, if it was not secured, allowing the demolition of the buildings.  Although the COH chose not to request or prove its monetary damages before the Commission it was granted a privileged lien (apparently for any demolition costs that may have been properly proven and certified as required by law). It also did, to some extent, partake of the benefits that it (the COH) was, or could have been entitled to receive as a result of the Commission's initial eight Orders. Not only did the COH exclude the Complex's owners from their own property, but it also secured the entire premises from entry, even by the unit's actual owner, resident or mortgagee. All of this was under the authority of the eight Commission Orders that the City later appeared to otherwise totally disregard.

Any remedy that the City did not receive from the Commission, was because it did not ask for it. The *only remedy* that the COH sought in their District Court filing that it could not have recovered in the underlying Administrative proceeding was its almost $500,000 in unnecessarily incurred attorneys fees, and that was

9

because it did not incur those fees *until after* it left the realm of the Commission and moved to District Court. The City could, however, have sought administrative costs (including attorneys fees) in the underlying administrative action, had it chosen to do so.

**The Jurisdiction Analysis**

Certain limitations on the subject matter jurisdiction of courts are imposed by the Texas Constitution. These include the constitutional requirement of standing, which imposes certain threshold standards regarding the stake a plaintiff must possess in a dispute before a court can exercise subject matter jurisdiction to resolve it. *See Texas Ass'n of Bus.*, 852 S.W.2d at 44345. Standing under the Texas Constitution requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." The general test for constitutional standing in Texas courts is whether there is a "real" (i.e., justiciable) controversy between the parties that will actually be determined by the judicial declaration sought.

The controversy in this action was adjudicated before an administrative body: the Building Standards Commission, and brought to a final Order that was binding on all parties. There was no justiciable issue to be brought in District Court.

As subject-matter jurisdiction is essential to the authority of a court to decide

10

a case, standing is implicit in the concept of subject-matter jurisdiction. Under the Texas Constitution, standing is implicit in the open courts provision, which contemplates access to the courts only for those litigants suffering an injury. Specifically, the open courts provision provides:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX. CONST. art. I, § 13 (emphasis added).

Appellant contends that the City did not have standing to bring suit in the District Court as all controversies were (or could have been) resolved by the Building Standards Commission.

**Ripeness:**

Just as subject matter jurisdiction requires that the party bringing the suit have standing, that there is a live controversy between the parties, and that the case be justiciable, *State Bar of Tex. v. Gomez,* 891 S.W.2d 243, 245 (Tex. 1994), Ripeness is also an element of subject matter jurisdiction. Ripeness is a legal question subject to *de novo* review. *Robinson v. Parker,* 353 S.W.3d 753, 755 (Tex. 2011); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). In evaluating ripeness, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Robinson,* 353 S.W.3d at 755; *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex. 2000); *Patterson v. Planned Parenthood*

11

*of Houston & Se. Tex., Inc.,* 971 S.W.2d 439, 442 (Tex. 1998). The ripeness analysis focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Robinson,* 353 S.W.3d at 755; *Patterson,* 971 S.W.2d at 442. A case is not ripe when determining whether a plaintiff has a concrete injury depends on contingent or hypothetical facts. *Waco Indep. Sch. Dist.,* 22 S.W.3d at 852. The ripeness doctrine serves to avoid premature adjudication. *Patterson,* 971 S.W.2d at 442.

At the time that the City filed suit in the District Court, Appellant contends that, not only was there no justiciable issue in the case, but also that the case was not ripe for consideration, as the Building Standards Commission still had jurisdiction over the issues raised. The commission had already provided for demolition of the property in the event that the property was not secured. The costs associated with demolition was already available to the City, in the form of privileged liens on the property and/or civil penalties; a remedy that the City received and subsequently perfected in April of 2009.

Attorneys fees and expenses were also available through the administrative process for a period of three years from the date of the initial orders (or until November 7, 2010). The City prematurely brought their suit in District Court in August, 2008, prior to the expiration of the Commission's jurisdiction. Additional

attorneys fees (incurred because of the filing in District Court) only arose based upon the District Court action, and was not a justiciable issue at the time of suit.

Appellants contend that the District Court did not have subject matter jurisdiction over the issues presented in the underlying case and the Court of Appeals panel erred in finding otherwise.

## CONCLUSION AND PRAYER

Appellant Andrew Whallon requests that the Court grant rehearing in this matter and find that the trial court lacked subject-matter jurisdiction to hear the underlying matter in District Court, and, as such, reverse the Corrected Final Judgement and render judgment for the Appellant.

WHEREFORE PREMISES CONSIDERED for all of the reasons set forth herein and in his Brief, Appellant Andrew Whallon, respectfully requests that this Court grant this Motion for Rehearing of the Court's February 5, 2015 Opinion and Judgment, and for all other such relief that Appellant may be justly entitled.

Respectfully submitted,

By: */s/ Denise Wells*
DENISE WELLS
SBOT No. 00797165
15935 Manor Square Dr.
Houston, TX 77062
Telephone: (832) 817-2234
Facsimile: (855) 796-9376
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2015, a true and correct copy of the foregoing document was served, pursuant to the Texas Rules of Appellate Procedure, on all counsel of record via the efiling system used in the State of Texas.

By: */s/ Denise Wells*